# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3224

_____

St. Paul Fire and Marine Insurance    \*
Company,    \*

      \*

         Appellee,    \*

      \*     Appeal from the United States

     v.           \*     District Court for the District of

      \*     Minnesota.

Compaq Computer Corporation,    \*

      \*

         Appellant.    \*


_____

Submitted: April 18, 2006
Filed:  August 4, 2006

_____

Before MURPHY, MELLOY and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.


     Compaq Computer Corporation ("Compaq") appeals the orders of the district court[1] granting summary judgment to insurer St. Paul Fire and Marine Insurance Company ("St. Paul") on St. Paul's action to recover payments made in defending Compaq from a class-action lawsuit and on Compaq's counterclaim for additional

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

costs of defending that lawsuit. For the reasons discussed below, we affirm the judgment of the district court.

## I.    BACKGROUND

St. Paul provided liability insurance to Compaq under a "Tech E&O" policy to cover damages arising from any "errors and omissions" in Compaq's computer products. "Errors and omissions" were defined to include negligent mistakes but not intentional misconduct. Under the Tech E&O policy, St. Paul had a duty to defend, and a right to control the defense of, any lawsuit against Compaq that alleged a covered liability. The policy allowed Compaq to take control of the defense of any reported claim only "if [St. Paul and Compaq] both agree, or if a court orders [Compaq] to do so." The associated Major Account Services Instructions ("MASI") agreement between St. Paul and Compaq provided additional detail about the right to control the defense of a covered claim, stating that "Compaq has been given right to select [defense counsel] subject to StPaul's [sic] right of refusal if refusal is reasonable. Selected counsel is subject to StPaul's [sic] retainer agrmnt [sic] & negotiated rates."

In October 1999, the *Thurmond* class action lawsuit[2] was filed against Compaq, alleging that Compaq "was aware, or should have been aware" of a technical problem with its floppy disk controllers. In a letter dated November 24, 1999, St. Paul agreed to defend Compaq "pursuant to the terms and conditions of the [Tech E&O] policy" but reserved its right to deny liability under the policy upon any subsequent determination that the *Thurmond* claim was not covered. The letter also expressed concern that Compaq was retaining defense counsel without St. Paul's approval in violation of the terms of the policy and the MASI agreement. St. Paul asked for immediate meetings to determine whether St. Paul would "agree to allow Compaq to

---

[2]*Thurmond v. Compaq Computer Corp.*, 171 F. Supp. 2d 667 (E.D. Tex. 2001).

maintain their current defense team and control defense." In the alternative, St. Paul offered to refer the matter to defense counsel of St. Paul's choice.

On January 31, 2000, St. Paul sent a letter recognizing that Compaq had continued to retain three law firms of Compaq's choice to defend the suit without St. Paul's approval. St. Paul stated that the rates charged by those firms were excessive compared to those charged by comparable firms and that Compaq's employment of three separate firms would likely lead to duplicative work and additional staffing and conferencing costs for interfacing among the three firms. After reiterating its rights under the Tech E&O policy and the MASI agreement to veto Compaq's choice of defense counsel and to pay no defense costs which were unreasonable or in excess of its approved rates, St. Paul stated its desire to "cooperate" with Compaq to allow Compaq to retain its choice of defense counsel. St. Paul offered to consent to Compaq's chosen defense counsel with the condition that St. Paul would pay only a reduced percentage of Compaq's defense costs. St. Paul also repeated its earlier reservation of the right to deny all coverage and, in addition, specifically reserved a right to recover any defense costs paid to Compaq in the event St. Paul later determined that the claim was not covered. The letter concluded by asking Compaq for confirmation that it accepted the offered defense of the *Thurmond* claim. No official acceptance by Compaq is documented in the record on appeal, but Compaq continued to employ its chosen counsel and began accepting payments from St. Paul in March 2000 at a rate of 50 percent of Compaq's approved defense costs.

On March 10, 2000, the *Thurmond* plaintiffs filed a Second Amended Complaint that set forth in more detail the alleged misconduct by Compaq. After reviewing the Second (and also Third) Amended Complaint, St. Paul decided that the *Thurmond* claim alleged only intentional, rather than negligent, misconduct and was, therefore, not covered under the Tech E&O policy. On September 5, 2000, St. Paul notified Compaq that it was withdrawing from Compaq's defense of the *Thurmond* suit retroactive to March 10, 2000, the date the Second Amended Complaint was

filed. However, St. Paul stated that it would continue to review defense fees and expenses incurred in the action prior to March 10, 2000. St. Paul continued to pay 50 percent of Compaq's approved costs incurred before that date, eventually paying a total of $668,739.95 to Compaq.

Compaq prevailed on summary judgment in the *Thurmond* action on March 20, 2001. In January 2002, Compaq sued St. Paul in Minnesota state court ("the state-court action"), seeking a declaration of St. Paul's duty to defend the *Thurmond* action and damages amounting to "any and all costs incurred [by Compaq] in defending" the *Thurmond* action. On St. Paul's motion to dismiss, the state trial court analyzed the identical language suggesting a negligence claim in the original and five amended *Thurmond* complaints and found that none of the complaints stated a cause of action based in negligence. Accordingly, the state trial court found that St. Paul had no duty to defend under the policy. The state trial court also stated that "the parties have not raised nor argued the question of whether St. Paul can retroactively withdraw its defense, and the Court renders no opinion regarding the same." The Minnesota Court of Appeals affirmed the trial court's reasoning in an unpublished opinion, and the Minnesota Supreme Court denied further review.

Reading the state-court action result to establish that St. Paul had no duty to defend any of the *Thurmond* complaints, St. Paul filed a subsequent action in Minnesota state court to recoup the payments it had made for defense costs incurred prior to the Second Amended Complaint.[3] Compaq removed the case to federal

---

[3]St. Paul was not required to assert this action as a compulsory counterclaim in Compaq's state-court action because St. Paul responded to that complaint with a motion to dismiss, which was granted, rather than with a responsive pleading. *See* Minn. R. Civ. P. 13.01 (requiring counterclaims arising out of the same subject matter as an opposing party's claim to be stated in the responsive pleading to that claim); Minn. R. Civ. P. 12.02 (stating that, if a party opts to respond to a suit with a motion to dismiss under the rule, the motion "shall be made" before a responsive pleading).

district court under diversity jurisdiction and counterclaimed for its remaining unpaid defense costs incurred before the Second Amended Complaint. On St. Paul's motion to dismiss the counterclaim, converted by the district court to a motion for summary judgment, the district court found that Compaq's counterclaim for coverage prior to the Second Amended Complaint was barred by the res judicata effect of the state-court action. In a subsequent order, the district court granted summary judgment to St. Paul on its action to recover from Compaq the payments it had already made. Compaq appeals both orders.

## II.    DISCUSSION

"We review a grant of summary judgment *de novo* and apply the same standards as the district court." *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005). "Summary judgment is warranted if the evidence, viewed in the light most favorable to the nonmoving party, shows that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Id.*

### A.    Res Judicata

We agree with the district court that res judicata bars Compaq's counterclaim for coverage under the policy prior to the Second Amended Complaint. The application of res judicata, or claim preclusion, is reviewed de novo. *Daley v. Marriott Int'l, Inc.*, 415 F.3d 889, 895 (8th Cir. 2005).[4] The "res judicata effect of the first forum's judgment is governed by first forum's law," in this case Minnesota law. *Austin v. Super Valu Stores, Inc.*, 31 F.3d 615, 618 (8th Cir. 1994) (quoting *Semler*

---

[4]St. Paul contends that the district court made a "finding of fact" that the state-court order rules on St. Paul's duty to defend the original complaint and that such a "finding of fact" should be reviewed for clear error. This contention has no merit. Interpretation of the effect of a previous court order is a matter of law. *See Daley*, 415 F.3d 895-96.

*v. Psychiatric Inst. of Washington, D.C., Inc.*, 575 F.2d 922, 930 (D.C. Cir. 1978));
*see also* 28 U.S.C. § 1738.  Under Minnesota law, the elements of res judicata are:
"(1) the earlier claim involved the same set of factual circumstances; (2) the earlier
claim involved the same parties or their privies; (3) there was a final judgment on the
merits; [and] (4) the estopped party had a full and fair opportunity to litigate the
matter." *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004).  "[B]ecause
res judicata is a flexible doctrine, the focus is on whether its application would work
an injustice on the party against whom estoppel is urged." *R.W. v. T.F.*, 528 N.W.2d
869, 872 n.3 (Minn. 1995).

Generally, a ruling on an insurer's duty to defend under one version of a
complaint does not bar a later suit over the duty to defend under a different version
of the complaint if the different version "change[s] the nature of the cause of action
alleged or assert[s] a new or different cause of action. . . ." *Bernard v. Gulf Ins. Co.*,
542 S.W.2d 429, 431 (Tex. Civ. App. 1976); *see also N. Trust Co. v. Aetna Life &
Sur. Co.*, 549 N.E.2d 712, 715-16 (Ill. App. Ct. 1989).  Compaq contends that this
rule should apply in the instant case, arguing that the state-court action only
addressed St. Paul's duty to defend after the Second Amended Complaint.  In support,
Compaq notes that St. Paul continued to review and pay 50 percent of Compaq's
approved pre-Second Amended Complaint costs during the pendency of the state-
court action, giving Compaq no reason to sue for those costs at the time of the state-
court action.  "[C]laims cannot be considered the same cause of action [for res
judicata purposes] if the right to assert the second claim did not arise at the same time
as the right to assert the first claim." *Hauschildt*, 686 N.W.2d at 841 (internal
quotation omitted).

In a usual case, Compaq's contentions might carry the day.  However, this is
an unusual case because Compaq itself asked the state court to resolve the issue of St.
Paul's duty to defend the original complaint.  Compaq, apparently trying to leverage
the fact that St. Paul was still reviewing and paying defense costs incurred before the

Second Amended Complaint, argued in the state-court action that the Second through Fifth Amended *Thurmond* complaints stated claims for negligence because (1) those complaints carried forward language from the original *Thurmond* complaint which stated a covered claim for negligence, and (2) the addition of new allegations of intentional misconduct in the later amended complaints did not dilute the negligence claim carried forward from the original complaint. In response, St. Paul was careful to state that it did not concede a duty under the policy to defend the original complaint and that it had reserved the right to recover the payments made. In other words, the state court was required to resolve the parties' dispute over whether the original complaint stated a covered claim for negligence in order to resolve Compaq's proffered argument. In addition, Compaq sought as relief in the state-court action "any and all costs incurred in defending" the *Thurmond* suit, rather than limiting its claim for damages to costs incurred after the filing of the Second Amended Complaint.

The state trial court addressed Compaq's argument as follows:

[A] careful reading of the various complaints in the underlying actions discloses that the plaintiffs are pursuing claims for intentional conduct only. . . .

. . . In paragraph 22 of each of the six complaints in [the *Thurmond*] action the plaintiffs allege Compaq "was aware, or, alternatively, should have been aware" of the problem with the [floppy disk controllers] in its products. The "should have been aware" language sounds in negligence or unintentional conduct. But this language cannot be read in a vacuum. A reading of the complaints as a whole makes it clear that phrase is purely gratuitous and that the plaintiffs were seeking recovery only for intentional conduct. . . .

It is this Court's opinion that, taking the complaints as a whole, a reasonable person could not conclude that the plaintiffs intended

anything other than a cause of action for "intentionally wrongful act(s) or omission(s)."

The ruling that "each of the six complaints" (the original and five amended complaints) in the *Thurmond* action stated claims only for intentional misconduct involved the same set of factual circumstances and the same parties as the instant action and constituted a final judgment on the merits that St. Paul had no duty to defend any version of the complaint. Furthermore, Compaq gave itself a full and fair opportunity to litigate coverage under the original *Thurmond* complaint when it asserted such coverage in the state-court action as an element of its claim for coverage under later versions. Because all of the elements of res judicata are established, the state-court action must be given preclusive effect with regard to St. Paul's duty to defend the original complaint.

We address briefly two additional arguments raised by Compaq. First, Compaq argues that the state court's concluding statement that "the parties have not raised nor argued the question of whether St. Paul can retroactively withdraw its defense, and the Court renders no opinion regarding the same" reserved the question of a duty to defend the original *Thurmond* complaint. Instead, we read this language to reserve only the question of St. Paul's right to recover money it already had paid to Compaq, the question St. Paul raises in the instant suit. This is the only reading that is consistent both with the plain language of that statement and the entirety of the state court's order.

Second, Compaq argues that because St. Paul continued to pay pre-Second Amended Complaint costs during the state-court action, it should be estopped from denying a duty to defend the original complaint under the doctrine of judicial estoppel. Minnesota courts have yet to adopt this doctrine. *See Ill. Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 800-01 (Minn. 2004). In addition, to be estopped from disclaiming a duty to defend the original complaint, St. Paul would

-8-

have had to prevail in the state-court action by *arguing to the court* that it had a duty to defend the original complaint. *See, e.g.*, *Bethesda Lutheran Homes & Servs., Inc. v. Born*, 238 F.3d 853, 857-58 (7th Cir. 2001) (stating that under the doctrine of judicial estoppel, "a party that has won a suit on one ground may not turn around and in another case obtain another judgment on an inconsistent ground"). St. Paul's decision to continue paying pre-Second Amended Complaint costs during the state-court action does not constitute an argument to the court; instead, St. Paul carefully and consistently refused to concede any legal duty to defend the original complaint. In any case, an argument by St. Paul that it had a duty to defend the original complaint would have tended to defeat St. Paul in the state-court action, rather than to help it prevail.

We conclude that the district court did not err in granting summary judgment to St. Paul on Compaq's counterclaim for pre-Second Amended Complaint defense costs on the basis of the res judicata effect of the state-court action.

## B. Reservation of the Right to Recover Payments Made

We next address St. Paul's right to recover the payments it made for defense costs incurred prior to the Second Amended Complaint, the subject of the district court's second summary judgment order. We find that the January 2000 letter offered a supplemental agreement regarding control of the defense of the *Thurmond* claim, as contemplated by the Tech E&O policy, and that the offer was accepted by Compaq. As a result, St. Paul's reservation of rights in the January 2000 letter is effective to permit recovery of the payments made under that agreement.

The parties agree that Texas law governs St. Paul's claim for reimbursement. "[T]he interpretation of insurance contracts is governed by the same rules of construction applicable to other contracts." *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). The district court granted summary judgment to St.

Paul under a quantum meruit theory, relying on a series of Texas decisions which analyze insurers' unilateral attempts to reserve a right of recovery of defense and settlement costs where the policy did not provide for the right. *See Matagorda County v. Texas Ass'n of Counties County Gov't Risk Mgmt. Pool*, 975 S.W.2d 782, 784-85 (Tex. App. 1998) ("*Matagorda I*") (holding that a unilateral reservation-of-rights letter did not establish a right to recover defense costs under the theory of quantum meruit because the letter did not state that the insurer would seek reimbursement of defense costs if it later won a finding of no coverage); *Texas Ass'n of Counties County Gov't Risk Mgmt. Pool v. Matagorda County*, 52 S.W.3d 128, 131 (Tex. 2000) ("*Matagorda II*") (holding that the same letter established no right to reimbursement from the insured of a settlement payment because the insurance policy allowed the insurer to settle any claim at its own discretion without the insured's consent but established no right to reimbursement for such settlement payments; in this context, the court stated that "a unilateral reservation-of-rights letter cannot create rights not contained in the insurance policy").

Compaq argues, as it did below, that the statement in *Matagorda II* that "a unilateral reservation-of-rights letter cannot create rights not contained in the insurance policy" compels a decision in Compaq's favor. The district court's application of quantum meruit was based in part on a more recent Texas Supreme Court case which expressly disavowed the broad statement in *Matagorda II* and held that, in some circumstances, a reservation-of-rights letter would entitle the insurer to reimbursement of the settlement amount from the insured; however, that case has since been vacated for rehearing. *See Excess Underwriters at Lloyds v. Frank's Casing Crew & Rental Tools, Inc.*, 48 Tex. Sup. Ct. J. 735 (Tex. 2005), *reh'g granted*, No. 02-0730 (Tex. Jan. 6, 2006). Compaq contends that *Matagorda II* currently controls the instant case, or that in the alternative we should certify the question of the effect of a unilateral reservation-of-rights letter to the Texas Supreme Court.

We disagree with both contentions because, as the district court noted, St. Paul's conduct in this case was not unilateral. The *Matagorda II* line of cases does not address the situation where the insurer agrees to relinquish another right it has under the policy in return for the reservation of the right to recover. The January 2000 letter contained an offer by St. Paul to forego its right under the Tech E&O policy and the MASI agreement to veto Compaq's choice of counsel if Compaq would agree to reduced coverage of defense costs—and to St. Paul's reservation of the right to reimbursement of those defense costs upon a subsequent determination that the policy did not cover the claim. Compaq could have dismissed the three firms it had hired and chosen a firm acceptable to St. Paul, as required by the policy and MASI agreement, which would have entitled Compaq to coverage of 100 percent of its reasonable defense costs. In that case, any attempt by St. Paul to assert a reservation of rights would have "lack[ed] the element of mutual promises" necessary to create a bilateral agreement. *Time Out Grocery v. Vanguard Group, Inc.*, 187 S.W.3d 41, 44 (Tex. App. 2005) (citing *Hutchings v. Slemons*, 174 S.W.2d 487, 489 (1943)). Instead, by continuing to employ its chosen counsel while accepting St. Paul's partial defense, Compaq accepted St. Paul's offer and created a supplemental agreement. *See United Concrete Pipe Corp. v. Spin-Line Co.*, 430 S.W.2d 360, 364 (Tex. 1968) (noting that performance under the conditions specified in an offer operates as an acceptance of the offer). The proviso in the Tech E&O policy that "[Compaq] may take over control of the defense of any outstanding claim . . . if [St. Paul and Compaq] both agree" contemplated such a supplemental agreement in cases where the insured wished to have greater control of its own defense than the policy granted.

A party who accepts the benefit of a contract must also assume its burdens. *Trinity Universal Ins. Co. v. Bill Cox Constr., Inc.*, 75 S.W.3d 6, 10-11 (Tex. App. 2001) (citing *Daniel v. Goesl*, 341 S.W.2d 892, 895 (Tex. 1960)). In this case, Compaq received the benefit of St. Paul's relinquishment of its right to veto Compaq's choice of counsel to defend the *Thurmond* suit; therefore, Compaq must

-11-

assume the burden of St. Paul's reservation of rights. St. Paul's reserved right to recover became enforceable when the state court held that St. Paul had no duty to defend the original *Thurmond* complaint, a holding to which we must give preclusive effect as discussed above. Therefore, the district court did not err in granting summary judgment to St. Paul on its action to recover defense costs paid to Compaq as provided in the January 2000 letter.

## III. CONCLUSION

We conclude that the district court did not err in granting summary judgment to St. Paul on its claim to recover pre-Second Amended Complaint defense costs paid by St. Paul and on Compaq's counterclaim for unpaid pre-Second Amended Complaint defense costs. Therefore, we affirm the judgment of the district court.

_____