# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

Nos. 07-3624/07-3625

———————

Westchester Fire Insurance Company,   *
a New York corporation,   *
  *
      Appellant/Cross-Appellee,   *
  *   Appeal from the United States
    v.   *   District Court for the
  *   District of Minnesota.
Douglas Wallerich, Patrick Lowther;   *
Sharon O'Reilly,   *
  *
      Appellee/Cross-Appellant.   *

———————

Submitted: October 15, 2008
Filed: April 24, 2009

———————

Before BYE, JOHN R. GIBSON, and SMITH, Circuit Judges.

———————

SMITH, Circuit Judge.

In this insurance coverage dispute, Westchester Fire Insurance Company ("Westchester") filed a declaratory judgment action against Douglas Wallerich, Patrick Lowther, and Sharon O'Reilly (collectively "Insureds"), seeking a determination whether it must provide coverage to the Insureds in defending an underlying lawsuit. Additionally, Westchester sought reimbursement of its expenses paid thus far in defending the underlying lawsuit. In response, the Insureds counterclaimed for coverage fees for Westchester's initial denial of coverage and for attorneys' fees in defending the declaratory judgment action. Westchester moved for

summary judgment, and the district court granted the motion in part, holding that Westchester had no duty to defend the Insureds in the underlying lawsuit but that Westchester was not entitled to reimbursement of its defense costs in the underlying litigation. Additionally, the district court sua sponte granted summary judgment to the Insureds in the amount of $6,335.33 for coverage fees resulting from Westchester's initial denial of coverage.[1] Both parties appeal from the district court's judgment. For the reasons outlined below, we affirm in part and reverse in part.

## I. *Background*

The Insureds formed the partnership Jewel of the Mississippi, LLP ("Jewel Partnership") with Mark Fayette, Mark's wife, Shayna Fayette, and others, for the purpose of acquiring and developing the Jewel Nursery property in Lake City, Minnesota.

The Jewel Partnership and Hale Irwin Golf Properties, LLC formed the Residences at the Jewel, LLC ("the Residences") to develop the property for commercial and residential use. Mark Fayette and the Insureds, in addition to being investors in the Residences, also held various officer and director positions within the Residences until its dissolution. Shayna Fayette was never an officer, director, or employee of the Residences.

In his capacity as Chief Manager of the Residences, Wallerich filed an application with Westchester for a business and management indemnity insurance policy. Westchester subsequently issued the policy to the Residences. Two sections of the policy are relevant to the issues in the instant case: the "General Terms and Conditions" section and the "Directors, Officers, and Company Indemnity Coverage" ("D&O coverage") section.

---

[1]The district court granted Westchester's motion to dismiss part of the Insureds' counterclaim that sought attorneys' fees for defending the declaratory judgment action. The Insureds have not appealed this determination.

According to the policy, the General Terms and Conditions "apply to each and every Coverage Section of [the] **Policy**. The terms and conditions of each Coverage Section apply only to that Coverage Section and shall not be construed to apply to any other Coverage Section." (Boldface in original). The Definitions section of the General Terms and Conditions explains as follows:

> Whenever used in this **Policy**, the terms that appear below in **boldface** type shall have the meanings set forth in this Definitions subsection of the General Terms and Conditions. However, if a term also appears in **boldface** type in a particular Coverage Section and is defined in that Coverage Section, that definition shall apply for purposes of that particular Coverage Section. Terms that appear in **boldface** in the General Terms and Conditions but are not defined in this Definitions subsection and are defined in other Coverage Sections of the **Policy** shall have the meanings ascribed to them in those Coverage Sections.

(Boldface in original). The General Terms and Conditions section also contains a clause dealing with "spouses," which provides, in relevant part:

> The . . . spouses . . . of natural persons who are **Insureds** shall be considered **Insureds** under this **Policy**; provided, however, coverage is afforded to such . . . spouses . . . only for a **Claim** arising solely out of their status as such and, in the case of a spouse . . . where the **Claim** seeks damages from marital community property, jointly held property or property transferred from the natural person who is an **Insured** to the spouse . . . .

(Boldface in original).

The insuring clause of the D&O coverage section provides:

> **Insurer** shall pay the **Loss** of the **Directors and Officers** for which the **Directors and Officers** are not indemnified by the Company and which

the **Directors and Officers** have become legally obligated to pay by reason of a Claim . . . for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

"**Loss** means damages, judgments, settlements, pre-judgment or post-judgment interest awarded by a court, and Costs, Charges and Expenses incurred by the Directors and Officers under the Insuring Clause[ ]. . . ." (Boldface in original). "**Cost, Charges, and Expenses** means reasonable and necessary legal costs, charges, fees and expenses incurred by any of the Insureds in defending Claims . . . ."(Boldface in original). "**Claim** means . . . a civil proceeding against any **Insured** seeking monetary damages, or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading . . . ." (Boldface in original). "**Wrongful act** means any actual or alleged error, omission, misleading statement, misstatement, neglect, breach of duty or act allegedly committed or attempted by: any of the **Directors or Officers** while acting in their capacity as such . . . ." (Boldface in original). The D&O section defines **"Insureds"** as "the **Company** and the **Directors and Officers**." (Boldface in original).

The D&O coverage section contains an "insured v. insured" exclusion, which states that:

> **Insurer** shall not be liable for **Loss** under this Coverage Section on account of any **Claim**:
>
> ***
>
> e) brought or maintained by, on behalf of, in the right of, or at the direction of any **Insured** in any capacity, any **Outside Entity** or any person or entity that is an owner of or joint venture participant in any **Subsidiary** in any respect and whether or not collusive, unless such **Claim**:
>
> > (I) is brought derivatively by a securities holder of the **Parent Company** and is instigated and continued totally

-4-

independent of, and totally without the solicitation, assistance, active participation of, or intervention of, any **Insured**[.]

(Boldface in original).

Mark and Shayna Fayette, individually and on behalf of the Residences, filed a lawsuit ("Fayette lawsuit") in Minnesota state court against the Insureds, alleging breach of various fiduciary duties in connection with the management and auction of certain residential and commercial properties held by the Residences. The Insureds timely notified Westchester of the lawsuit and sought coverage for their defense. Westchester denied coverage and refused to defend the Insureds. The Insureds then hired counsel, who urged Westchester to reconsider its position. Thereafter, Westchester changed its position, agreeing to defend the Insureds against the Fayette lawsuit, subject to a full reservation of rights, including: (1) the right to withdraw from the Insureds' defense; (2) the right to deny insurance coverage; (3) the right to file a declaratory judgment action challenging its obligation to defend the Insureds in the Fayette lawsuit; (4) the right to seek reimbursement of defense expenses in the event that a court found that Westchester had no duty to defend the Insureds; and (5) the right to deny any indemnity obligation. Westchester stated in the reservation-of-rights letter that its offer to advance defense expenses was "not an admission of any obligation under the policy." The Insureds objected to Westchester's reservations but accepted its offer to advance defense expenses to them.

Westchester then filed a declaratory judgment action in federal district court, seeking a determination that it owed no coverage to the Insureds. It also asserted that it was entitled to reimbursement for the fees and costs that it incurred in defending the underlying Fayette lawsuit. The Insureds counterclaimed for coverage fees incurred as a result of Westchester's initial denial of coverage and for attorneys' fees in defending this declaratory judgment action. Westchester then moved for summary

judgment on the grounds that the "insured v. insured" exclusion in the insurance policy precludes coverage.

The district court granted in part Westchester's motion for summary judgment. Despite finding that Shayna Fayette was not an "Insured" within the meaning of the policy, the district court ultimately concluded that Westchester had no duty to defend or indemnify the Insureds in the Fayette lawsuit. The court determined that the "insured v. insured" exclusion applied because Mark Fayette—an Insured—was a party to the underlying lawsuit. But the court denied Westchester's motion for summary judgment with respect to its reimbursement claim for defense costs expended in the underlying litigation, finding no agreement to reimbursement in the insurance policy. The district court also sua sponte granted summary judgment to the Insureds on their counterclaim for coverage fees, awarding them coverage fees in the amount of $6,335.33.

Both Westchester and the Insureds appeal from the district court's judgment.

## II. *Discussion*

On appeal, Westchester challenges the district court's determinations that (1) Shayna Fayette is not an "insured" under the policy; (2) Westchester is not entitled to reimbursement of defense costs; and (3) the Insureds are entitled to coverage-counsel fees.

The Insureds cross-appeal the district court's judgment, arguing that the "insured v. insured" exclusion does not apply and, as a result, Westchester has a duty to defend the Insureds in the Fayette lawsuit.

### A. *Whether Shayna Fayette is an "Insured"*

Westchester's first argument is that, although the district court correctly held that Westchester had no duty to defend the Insureds against any portion of the Fayette

lawsuit, it erroneously found that Shayna Fayette was not an "Insured" under the policy. Westchester maintains that this finding creates the potential for Mark and Shayna Fayette to dismiss their complaint and refile in Shayna Fayette's name alone.

Looking to the language of the policy, the district court determined that Shayna Fayette was not an "Insured." According to the district court, the D&O coverage section defines the term "**Insureds**" to mean "the **Company** and the **Directors and Officers**." (Boldface in original). But the General Terms and Conditions section states that a spouse is an "Insured" under the policy. As a result, the district court concluded that an ambiguity existed in the policy because the definition of "Insured" is subject to two different meanings. The court noted that the General Terms and Conditions section states "that Terms that appear in **boldface** in the General Terms and Conditions but are not defined in this Definitions subsection and are defined in other Coverage Sections of the **Policy** shall have the meanings ascribed to them in those Coverage Sections." (Boldface in original). The court observed that the term "Insureds" is not defined in the General Terms and Conditions section; instead, it is only defined in the D&O coverage section to mean "the **Company** and the **Directors and Officers**." (Boldface in original). This definition does not include spouses. As a result, the district court held that because the term "Insureds" is defined in the D&O coverage section, meaning that such definition is the only definition applicable to the D&O coverage section and its exclusions, Shayna Fayette is not an "Insured" under the D&O policy.

Under Minnesota law, "[t]he insured bears the burden of demonstrating coverage under an insurance policy." *SECURA Supreme Ins. Co. v. M.S.M.*, 755 N.W.2d 320, 323 (Minn. Ct. App. 2008). If the insured meets this burden, then the insurer "must establish the applicability of exclusions." *Id*. "[A]ll exclusions are construed strictly against the insurer." *Id*. (internal quotations and citation omitted).

-7-

"General principles of contract interpretation apply to insurance policies. When the language in an insurance policy is unambiguous, the language must be given its plain and ordinary meaning." *Id.* (internal quotations and citations omitted). But if the court finds that the policy language is ambiguous, such ambiguity must be resolved in the insured's favor. *Id.* "This is done by interpreting the ambiguity in accordance with the reasonable expectations of the insured." *Id.* "In deciding whether an ambiguity truly exists" in an insurance policy, the court must read the policy "as a whole." *Mutual Serv. Cas. Ins. Co. v. Wilson Twp.*, 603 N.W.2d 151, 153 (Minn. Ct. App. 1999). "The language must be considered within its context, and with common sense." *Id.* If the court concludes that "a phrase is subject to two interpretations, one reasonable and the other unreasonable in the context of the policy, the reasonable construction will control and no ambiguity exists." *Id.*

Likewise, provisions in an insurance contract "must be read and studied independently and in context with all other relevant provisions and the language of the policy as a whole." *West Bend Mut. Ins. Co. v. Armstrong*, 419 N.W.2d 848, 850 (Minn. Ct. App. 1988). "Construction of an insurance policy which entirely neutralizes one provision should not be adopted if the contract is susceptible of another construction which gives effect to all of its provisions and is consistent with the general intent." *Id.*

Viewing the relevant policy language in context, giving effect to all of the policy's provisions, and applying a commonsense construction to such language, we hold that no ambiguity exists in the policy language and that Shayna Fayette is an "Insured" under the policy. The term "Insured" does appear in boldface type in the General Terms and Conditions section. The term is not defined in the Definitions subsection of the General Terms and Conditions section. Likewise, the "Estates, Legal Representatives, and Spouses" provision appearing in the General Terms and Conditions section does not define "Insured" but instead advises that "[t]he . . . spouses . . . of natural persons who are **Insureds** shall be considered

**Insureds** under this **Policy** . . . ." (Boldface in original). Thus, this provision does not purport to define the term "Insured"; instead, it only explains that spouses are *considered* "Insureds" under the policy—however that term is defined in the relevant coverage section. Therefore, as directed by the policy, because the term "Insured" is not defined in the Definitions subsection of the General Terms and Conditions section, the relevant coverage section's definition of "Insured" governs. The relevant coverage section is the D&O coverage section, which defines an "Insured" as "the **Company** and the **Directors and Officers**." (Boldface in original).

Applying the D&O coverage section's definition of "Insured" to the "Estates, Legal Representatives, and Spouses" provision in the General Terms and Conditions section yields the following result:

> The . . . spouses . . . of natural persons who are **Insureds** [defined as the Company and the Directors and Officers] shall be considered **Insureds** [defined as the Company and the Directors and Officers] under this **Policy**. . . .

(Boldface in original). Because Mark Fayette is a director and officer of the Residences, he is an "Insured" under the D&O policy. In turn, applying the "Estates, Legal Representatives, and Spouses" provision, because Shayna Fayette is the spouse of Mark Fayette—a director and officer who meets the definition of "Insured" under the D&O coverage section—she is also considered an "Insured." This plain language, commonsense interpretation of the policy gives effect to all sections and provisions in the policy.

Because both Mark Fayette and Shayna Fayette are "Insureds" under the policy, the "insured v. insured" exclusion applies because the policy excludes coverage for "any **Claim** . . . brought or maintained by, on behalf of, in the right of, or at the direction of any **Insured** in any capacity . . . whether or not collusive . . . ." (Boldface

-9-

in original).[2] Therefore, Westchester has no duty to defend the Insureds. As a result, we need not address the question whether the "insured v. insured" exclusion applies when the lawsuit involves the presence of both an insured plaintiff and a non-insured plaintiff.

---

[2]The dissent relies on what it considers a "limitation" in the General Terms and Conditions section to conclude that Shayna Fayette *is not* an insured. Without question, the General Terms and Conditions section makes clear that Shayna Fayette—a "spouse" of a natural person" who is an "Insured" "shall be considered" an Insured under the policy. But the section goes on to explain that when the spouse is a *defendant*—not a plaintiff—other conditions apply. The exclusion states that Westchester will "afford" coverage to spouses "only for a **Claim** arising solely out of their status as such and, in the case of a spouse . . . where the **Claim** seeks damages from marital community property, jointly held property or property transferred from the natural person who is an **Insured** to the spouse[.]" (Boldface in original). Thus, when a spouse of an Insured is *being sued*, the policy only considers the spouse an Insured if: (1) a claim is brought against the spouse arising solely out of that spouse's status as an Insured's spouse and (2) the claim seeks damages from marital property, jointly held property, or property transferred from the Insured to the spouse.

In the present case, these two limitations do not apply because Westchester is not having to "afford" any coverage to Shayna Fayette, as she is not being sued but is instead a plaintiff. The dissent does not recognize this distinction in its analysis, nor does it mention the "insured v. insured" exclusion in the D&O coverage section, which states that Westchester is not liable "on account of any **Claim**" that is "brought or maintained by, on behalf of, in the right of, or at the direction of *any **Insured** in any capacity*." (Boldface in original; emphasis added). This language, unlike the "limitations" that the dissent relies on in the General Terms and Conditions section, specifically covers a situation where an Insured is a plaintiff—not a defendant. We acknowledge the accuracy of the dissent's analysis *had Shayna Fayette been a defendant* in the present case. But she is not a defendant; she is a plaintiff. As a result, she cannot rely on the limitations contained in the General Terms and Conditions section.

B. *Whether Westchester is Entitled to Reimbursement of Defense Costs*

Because we conclude that Westchester has no duty to defend the Insureds, we must necessarily determine whether Westchester is entitled to reimbursement of defense costs expended in the Fayette lawsuit.

The question whether insurers have a right to obtain reimbursement from insureds for funds advanced toward defense of uncovered claims has not been addressed by Minnesota's state appellate courts. Westchester marshals four arguments urging us to conclude that Minnesota courts, like most state courts, would allow reimbursement. Westchester first asserts that, under Minnesota law, an insurer's duty to defend is less broad than in some states. Insurers in Minnesota are not obligated to defend whenever coverage is merely "arguable" based upon a policy interpretation dispute. Second, Westchester maintains that insurers' reimbursement rights stem from equitable legal principles and not contract terms. Reimbursement, by definition, is only available for the defense of uncovered claims. Third, Westchester states that Minnesota's federal courts have reached conflicting results with respect to insurers' reimbursement rights under Minnesota law and that the better-reasoned decisions recognize a right of reimbursement because it is most consistent with Minnesota law. Finally, Westchester argues that Minnesota's general contract and insurance law is most compatible with the equitable theories that underpin insurers' unilateral reimbursement rights, particularly in cases such as this one in which the insurer did not owe anything under the policy.

Nationally, courts "are split as to whether an insurer may bring a cause of action against an insured for attorneys' fees and costs expended defending the insured in a different matter." *Gen. Star Indem. Co. v. V.I. Port Auth.*, 564 F. Supp. 2d 473, 476 (D. V.I. 2008) (citing *Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 448 F.3d 252, 258 (4th Cir. 2006) (acknowledging that "jurisdictions differ on the soundness of an insurer's right to reimbursement of defense costs")).

-11-

"[N]umerous courts recognize an insurer's right to reimbursement of defense fees paid where it is determined that the insurer had no duty to defend. Indeed, many cases refer to this holding as the majority position." *Westport Ins. v. Ong*, No. 1:07CV10 DAK, 2008 WL 892941, at *4 (D. Utah Mar. 28, 2008) (slip op.) (citing *St. Paul Fire & Marine Ins. Co. v. Compaq*, 457 F.3d 766, 772 (8th Cir. 2006) (applying Texas law); *United Nat'l Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914, 921 (6th Cir. 2002) (applying Ohio law); *Envirotech Indus., Inc. v. United Capitol Ins.*, 141 F.3d 1175 (9th Cir. 1998) (unpublished); *Resure, Inc. v. Chem. Distrib., Inc.*, 927 F. Supp. 190, 194 (M.D. La. 1996) (applying New Mexico law); *St. Paul Mercury Ins. Co. v. Med. Lab. Network, Inc.*, 690 F. Supp. 901, 904 (C.D. Cal. 1988); *Jim Black & Assoc. v. Transcon. Ins. Co.*, 932 So. 2d 516, 518 (Fla. Dist. Ct. App. 2006); *Travelers Cas. & Sur. Co. v. Ribi Immunochem*, 108 P.3d 469, 480 (Mont. 2005); *Sec. Ins. Co. of Hartford v. Lumbermens Mut. Cas. Co.*, 826 A.2d 107, 125 (Conn. 2003); *Buss v. Superior Court*, 939 P.2d 766, 778 (Cal. 1997)).

"Courts that recognize such claims for reimbursement of defense costs generally do so under a quasi-contract theory, allowing recovery to prevent unjust enrichment." *Gen. Star Indem. Co.*, 564 F. Supp. 2d at 477. The seminal case allowing reimbursement is *Buss*; in that case, the California Supreme Court affirmed a ruling that an insurer that issued a standard commercial general liability insurance policy has a right of reimbursement of defense costs for claims not even potentially covered under its policy, explaining that:

> Under the policy, the insurer does not have a duty to defend the insured as to the claims that are not even potentially covered. With regard to defense costs for these claims, the insurer has not been paid premiums by the insured. It did not bargain to bear these costs. To attempt to shift them would not upset the arrangement. The insurer therefore has a right of reimbursement that is implied in law as quasi-contractual, whether or not it has one that is implied in fact in the policy as contractual. As stated, under the law of restitution such a right runs against the person who benefits from "unjust enrichment" and in favor of the person who

-12-

suffers loss thereby. The "enrichment" of the insured by the insurer through the insurer's bearing of unbargained-for defense costs is inconsistent with the insurer's freedom under the policy and therefore must be deemed "unjust." It is like the case of A and B. A has a contractual duty to pay B $50. He has only a $100 bill. He may be held to have a prophylactic duty to tender the note. But he surely has a right, implied in law if not in fact, to get back $50. Even if the policy's language were unclear, the hypothetical insured could not have an objectively reasonable expectation that it was entitled to what would in fact be a windfall.

939 P.2d at 776–77 (internal citation omitted). In a related footnote, the court further explained:

That the insurer does not have a right of reimbursement express in the policy does not mean that it does not have one implied in law. Rather, that it has an implied-in-law right helps explain why it does not have an express-in-policy one. The former renders the latter unnecessary. This is proved by the fact that, with an implied-in-law right and without an express-in-policy one, insurers have sought, and obtained, reimbursement—and have done so, on the evidence of reported decisions, for much more than a decade. To be sure, an express right could have been introduced into the policy. But that it was not is not dispositive.

*Id*. at 776–77 n.13 (internal citations omitted).

According to the *Buss* court, in order to obtain a reimbursement of defense costs, an insurer must reserve its rights on this basis. It is not necessary that the insured agree with the insurer's reservation of rights to obtain a reimbursement of defense costs for it to be valid; "[b]ecause the right is the insurer's alone, it may be reserved by it unilaterally." *Id*. at 784 n.27.

In contrast to *Buss* and the courts relying on its rationale, the "most recent decisions" reflect the minority position. *Westport Ins.*, 2008 WL 892941, at *4. These courts "have refused to recognize claims by insurers for reimbursement of defense costs expended under a unilateral reservation of rights, absent a provision for such reimbursement in the insurance policy." *Gen. Star Indem. Co.*, 564 F. Supp. 2d at 477 (citing *Terra Nova Ins. Co. Ltd. v. 900 Bar, Inc.*, 887 F.2d 1213, 1219 (3d Cir. 1989) ("[W]e believe, the Pennsylvania Supreme Court would preclude an insurer who provides a defense under reservation of rights from recovering the cost of that defense from its insured if it is later determined that there is no coverage."); *Perdue Farms,* 448 F.3d at 258 (holding that, under Maryland law, the insurer had no right to reimbursement for defense costs attributable to non-covered claims); *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 153 F.3d 919, 924 (8th Cir. 1998) (holding that an insurer was not entitled to reimbursement of defense costs expended prior to the court's determination that there was no duty to defend); *LA Weight Loss Ctrs., Inc. v. Lexington Ins. Co.*, 2003 No. 1560, 2006 WL 689109, at *6 (Pa. Ct. C.P. Mar. 1, 2006) (holding that an insurer could not sustain a claim for restitution of costs defending uncovered claims based on an unjust enrichment theory); *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1102 (Ill. 2005) ("We . . . refuse to permit an insurer to recover defense costs pursuant to a reservation of rights absent an express provision to that effect in the insurance contract between the parties."); *Shoshone First Bank v. Pac. Employers Ins. Co.*, 2 P.3d 510, 514 (Wy. 2000) ("There is no indication in the Policy of any distinction to be made between covered and non-covered claims so far as the defense of those claims is concerned, and we will not permit the Policy to be modified by subsequent letters from the insurer to the insured.")). "Courts disallowing such claims for reimbursement generally reason that an insured is not unjustly enriched when an insurer agrees to defend against uncovered claims under a reservation of rights." *Id*. at 477–78.

The Third Circuit explained its reasoning for rejecting a right of reimbursement, stating:

-14-

A rule permitting such recovery would be inconsistent with the legal principles that induce an insurer's offer to defend under reservation of rights. Faced with uncertainty as to its duty to indemnify, an insurer offers a defense under reservation of rights to avoid the risks that an inept or lackadaisical defense of the underlying action may expose it to if it turns out there is a duty to indemnify. At the same time, the insurer wishes to preserve its right to contest the duty to indemnify if the defense is unsuccessful. Thus, such an offer is made at least as much for the insurer's own benefit as for the insured's. If the insurer could recover defense costs, the insured would be required to pay for the insurer's action in protecting itself against the estoppel to deny coverage that would be implied if it undertook the defense without reservation.

*Terra Nova*, 887 F.2d at 1219–20 (predicting that Pennsylvania law would preclude an insurer that tenders a defense under a reservation of rights and is later deemed to owe no duty to defend from recovering such defense costs from the insured).

More recently, the Illinois Supreme Court also rejected a right of reimbursement, explaining:

[W]e cannot say that an insured is unjustly enriched when its insurer tenders a defense in order to protect its own interests, even if it is later determined that the insurer did not owe a defense. Certainly, if an insurer wishes to retain its right to seek reimbursement of defense costs in the event it later is determined that the underlying claim is not covered by the policy, the insurer is free to include such a term in its insurance contract. Absent such a provision in the policy, however, an insurer cannot later attempt to amend the policy by including the right to reimbursement in its reservation of rights letter.

*Gen. Agents*, 828 N.E.2d at 1103.

Conflicting decisions exist within this circuit's district courts as to whether a right to reimbursement for insurers exists under Minnesota law. *Compare Knapp v.*

-15-

*Commonwealth*, 932 F. Supp. 1169 (D. Minn. 1996), *with Employers Mut. Cas. Co. v. Indus. Rubber Prod., Inc.*, No. Civ. 04-3839, 2006 WL 453207 (D. Minn. Feb. 23, 2006).

In *Knapp*, a diversity case governed by Minnesota law, an insurer sought reimbursement of attorneys' fees and costs for defense under a reservation of rights where there was no coverage or duty to defend. 932 F. Supp. at 1171. The district court acknowledged that "Minnesota has not before determined whether or not an insurer may be reimbursed for attorney's fees and costs, when it has been determined that no coverage exists and the insurer undertook the defense under a reservation of rights letter." *Id*. In granting summary judgment to the insurer on its right to reimbursement, the district court held:

> [The insured] offers little to dissuade this Court from following those courts that have recognized the rights of insurers to seek reimbursement for its attorney's fees and costs under certain circumstances. California law is persuasive and consistent with earlier Minnesota cases addressing the responsibility of an insurer to meet its duty to defend first and challenge policy coverage questions later. The courts should be consistent in encouraging insurance companies to properly meet their duty to defend its insured against third party claims and minimize unnecessary claims to enforce policy coverage. However, where an insurer has properly met its duty and subsequently successfully challenges policy coverage, it should be entitled to the full benefit of such a challenge and be reimbursed for the benefits it bestowed, in good faith, to its insured.

*Id*. at 1172 (internal citation omitted). The court also addressed the insured's argument that "insurance companies are not allowed to require their insured to pay defense costs by unilaterally sending reservation of rights letters unless there is an agreement or understanding with the insured." *Id*. The court rejected this argument, finding that the language contained in the reservation-of-rights letter sufficiently and specifically

reserved the right to seek reimbursement of litigation expenses, finding that the insurer "clearly indicated its desire to reserve its right to later seek reimbursement for attorney's fees and costs." *Id.* According to the court, "[the insured's] silence in response to [the insurer's] reservations of rights letter, and subsequent acceptance of the defense provided by [the insurer], constitutes an implied agreement to the reservation of rights." *Id.*

In contrast, in *Employers Mutual*, the same district court, sitting in diversity and applying Minnesota law, held that no right of reimbursement exists. 2006 WL 453207, at *6. Relying on a decision from this court issued after *Knapp*, the district court stated:

> In [*Liberty Mutual*], the Court determined that the absolute pollution exclusion barred coverage. 153 F.3d [at 923]. In light of the Court's finding of no coverage, the insurer argued it was entitled to reimbursement of all defense costs paid. Applying Missouri law, the Court noted:
>
>> Although the parties disputed whether the claims were excluded from coverage by operation of the pollution exclusion clause, any uncertainty as to such coverage should be resolved in [the insured's] favor. Therefore [the insurer] remained obligated to defend [the insured] so long as there remained any question as to whether the underlying claims were covered by the policies. Upon such determination that the . . . claims . . . were excluded from coverage, the district court properly concluded that [the insurer's] duty to defend [the insured] in this action expired. Because we conclude that [the insurer] had a duty to defend [the insured] until such determination was made, we reject [the insurer's] argument that it is entitled to reimbursement of defense costs. *Id.* at 924.

[*See also Gen. Agents*, 828 N.E.2d at 1092] (court held it would follow the minority rule which refuses to permit an insurer to recover defense costs pursuant to a reservation of rights absent an express provision to that effect in the insurance contract).

While the Eighth Circuit's decision in *Liberty Mutual* was made pursuant to the law of Missouri as to the scope of the duty to defend, this Court recognizes that Minnesota law has interpreted the duty to defend consistent with Missouri's interpretation. *See e.g. Brown v. State Auto & Casualty Underwriters*, 293 N.W.2d 822, 825–26 (Minn. 1980) (duty to defend triggered when any part of the claim arguably falls within coverage of policy). This Court will therefore follow the reasoning of the Eighth Circuit in *Liberty Mutual* and find an insurer is not entitled to the reimbursement of defense costs expended prior to the determination of coverage, unless specifically provided for in the insurance policy.

In this case, Employers did include in its reservation of rights letter a right to seek reimbursement of defense costs. However, IRP did not explicitly respond to this reservation, and the CGL policy is silent as to Employers' right to seek reimbursement. Accordingly, the Court will deny Employers' request for reimbursement of defense costs expended prior to the date of this Order.

*Id.*

As noted *supra*, the district court in *Employers Mutual* relied on this court's holding in *Liberty Mutual* in reversing its prior position in *Knapp*. In *Liberty Mutual*, the district court had determined that although the insurer had an initial duty to defend the insured, such a duty expired upon the determination that the claims against the insured were excluded from coverage by operation of an exclusion clause in the underlying policies. 153 F.3d at 923. Before this court, the insured argued that it had no initial duty to defend the insured "and that it [was] entitled to reimbursement of all defense costs paid." *Id.* This court rejected that argument, holding that, under Missouri law, the liability insurer remained obligated to defend insured so long as there

remained any question as to whether the underlying claims were covered by the policies. *Id*.

In contrast, this court, applying Texas law, has held that an insured entered into a binding agreement that allowed the insurer to reserve the right to recoup defense costs in exchange for the insurer's agreement to forgo its right to veto the insured's choice of defense counsel. *St. Paul Fire & Marine Ins.*, 457 F.3d at 766. In *St. Paul*, the insurer provided liability insurance to the insured. *Id*. at 768. After the insured was sued, the insurer sent a letter to the insured, agreeing to defend the insured pursuant to the policy but reserving its right to deny liability under the policy upon any subsequent determination that the underlying lawsuit was not covered. *Id*. The letter also expressed concern that the insured was retaining defense counsel without the insurer's approval in violation of the terms of the policy. *Id*. Thereafter, the insurer sent a letter to the insured, recognizing that the insured had continued to retain three law firms of its choice to defend the suit without the insurer's approval. *Id*. After reiterating its rights under the policy to veto the insured's choice of defense counsel and to pay no defense costs which were unreasonable, the insurer stated its desire to "cooperate" with the insured to allow the insured to retain its choice of defense counsel. *Id*. The insurer repeated its earlier reservation of rights to deny all coverage and, in addition, specifically reserved a right to recover any defense costs paid to the insured in the event that the insurer later determined that the claim was not covered. *Id*. The letter concluded by asking the insured for confirmation that it accepted the offered defense of the underlying claim. *Id*. No official acceptance occurred, but the insured continued to employ its chosen counsel and began accepting payments from the insurer. *Id*.

On appeal, we found that the insurer's conduct was not "unilateral" and that Texas law failed to address the situation "where the insurer agrees to relinquish another right it has under the policy in return for the reservation of the right to recover." *Id*. at 773. The insurer's letter contained an offer to forgo its right under the

-19-

policy to veto the insured's choice of counsel if the insured would agree to reduced coverage of defense costs—"and to [the insurer's] reservation of the right to reimbursement of those defense costs upon a subsequent determination that the policy did not cover the claim." *Id*. According to this court, the insured

> could have dismissed the three firms it had hired and chosen a firm acceptable to [the insurer], as required by the policy . . . which would have entitled [the insured] to coverage of 100 percent of its reasonable defense costs. In that case, any attempt by [the insurer] to assert a reservation of rights would have lacked the element of mutual promises necessary to create a bilateral agreement.

*Id*. (internal quotations and citation omitted). But the insured, by continuing to employ its chosen counsel while accepting the insurer's partial defense, accepted the insurer's offer and created a supplemental agreement. *Id*.

In the present case, we hold that Westchester is not entitled to reimbursement of defense costs. First, even if we applied the majority rule, as in *Knapp*, the *Knapp* case is distinguishable. In that case, the district court specifically noted that the insured remained silent in response to the insurer's reservation-of-rights letter and subsequently accepted the defense, equating to an implied agreement to the reservation of rights by the insurer. Here, the exact opposite occurred: In response to Westchester's reservation-of-rights letter, the Insureds explicitly *rejected* such terms in the letter but nonetheless offered to accept Westchester's defense. As a result, when Westchester decided to still tender a defense in spite of the Insureds' rejection of its terms in the reservation-of-rights letter, it was impliedly agreeing to proceed on the Insureds' terms.

Second, the instant case is also distinguishable from *St. Paul* in which this court recognized a right of reimbursement. Unlike in *St. Paul*, in which the insurer explicitly agreed to forgo another right that it had under the policy in return for the reservation

of rights, Westchester never explicitly offered to forgo any right to the Insureds in exchange for tendering a defense.

Finally, although Minnesota appellate courts have not announced whether they would permit a right of reimbursement, we find the most recent state and federal court decisions' adoption of the minority position more persuasive. Here, Westchester could have included in the policy an express provision for such reimbursement. Westchester cannot now unilaterally amend the policy by including the right to reimbursement in its reservation-of-rights letter.

## C. *Whether the Insureds Are Entitled to Coverage Fees*

Westchester's final argument on appeal is that the district court erred by sua sponte awarding the insureds their coverage fees. According to Westchester, coverage fees are only available in Minnesota when an insurer breaches its duty to defend. Because Westchester had no duty to defend, it asserts that the district court erroneously found that Westchester breached its duty to defend by "initially" denying coverage to the Insureds.

In response, the Insureds contend that the district court correctly concluded that Westchester must pay the insured's coverage fees incurred before Westchester accepted the duty to defend. According to the Insureds, Westchester still has a duty to defend, so these coverage fees are clearly awardable. But even if this court concludes that Westchester does not have a duty to defend, the Insureds assert that the trial court correctly concluded that the coverage issue was "arguable" at the time of tender and thus Westchester should have agreed to accept the defense in the first instance. "Arguable coverage" includes disputed issues of policy interpretation. By accepting the duty to defend, Westchester admitted that coverage was arguable and needed to be resolved by the district court.

In the insurance context, Minnesota courts allow recovery for attorneys' fees "when an insurer breaches its duty to defend." *In re Silicone Implant Ins. Coverage Litig.*, 667 N.W.2d 405, 422 (Minn. 2003). An insurer has a duty to defend "[i]f any part of a cause of action against the insured arguably falls within the scope of the insurance coverage, either on the face of the complaint or from facts known to the insurer." *Denike v. W. Nat. Mut. Ins. Co.*, 473 N.W.2d 370, 373 (Minn. Ct. App. 1991). But if an insurer is under no duty to defend, the insured is not entitled to attorneys' fees and litigation costs. *St. Paul Fire & Marine Ins. Co. v. Seagate Tech., Inc.*, 570 N.W.2d 503, 507 (Minn. Ct. App. 1997). Thus, "absent statutory authorization, an insured's ability to recover attorney fees is limited to situations where the insurer has breached its contractual duty to defend." *Silicone*, 667 N.W.2d at 423.

We have already determined that the policy's "insured v. insured" exclusion applies and that the language of the policy is unambiguous as to Shayna Fayette's status as an "Insured" under the policy. Therefore, there was never "arguable coverage." As a result, Westchester never had a duty to defend the Insureds. Applying Minnesota law, the Insureds are not entitled to coverage fees because Westchester never had a duty to defend.

## III. *Conclusion*

Accordingly, we hold that because Shayna Fayette is an "Insured" under the policy, the "insured v. insured" exclusion applies, meaning Westchester never had a duty to defend the Insureds in the Fayette lawsuit. Therefore, we affirm the district court's grant of summary judgment to Westchester as to its claim that it had no duty to defend the Insureds.

Second, we affirm the district court's denial of summary judgment to Westchester on its claim for reimbursement costs, as Westchester is not entitled to reimbursement of defense costs.

Finally, we reverse the district court's grant of summary judgment to the Insureds on their claim for coverage fees.

BYE, Circuit Judge, dissenting.

Contrary to the Court's conclusion, Shayna Fayette is not an insured under Westchester's policy for the claims she brought against Douglas Wallerich, Partick Lowther, and Sharon O'Reilly (the Insureds). I therefore respectfully dissent.

I

The Court concludes Shayna Fayette is an insured under the policy – triggering the policy's insured vs. insured exclusion – by misinterpreting and misapplying the "Estates, Legal Representative, and Spouses" provision found in the General Terms and Conditions section of the policy. That provision, in relevant part, provides as follows:

> The . . . spouses . . . of natural persons who are **Insureds** shall be considered **Insureds** under this **Policy**; provided, however, coverage is afforded to such . . . spouses only for a **Claim** arising solely out of their status as such and, in the case of a spouse . . . where the **Claim** seeks damages from marital community property, jointly held property or property transferred from the natural person who is an **Insured** to the spouse[.]

Addendum 18.

The purpose of this clause is to consider a spouse of an insured *as* an insured only in the limited instances set forth in the modifying phrase which follows the semicolon. Thus, Shayna Fayette is considered an insured under the policy only when two conditions are met: 1) a claim is brought against her arising solely out of her

status as Mark Fayette's spouse; and 2) the claim seeks damages from marital community property, jointly held property or property transferred from her husband to herself. For example, there may be instances where an insured tries to shield assets from potential claimants by transferring them to a spouse, and a claimant sues both the insured and the spouse attempting to reach the transferred assets. In such a situation, the above provision of the policy provides that the spouse shall be considered an insured under the policy.

The limited situation which triggers this provision is not involved in this case. First, the provision comes into play only when a claim is brought *against* a spouse, not where a spouse *brings* a claim. The provision is a limited grant of coverage, not a policy exclusion; it provides coverage *to* spouses for claims brought against them. Contrary to the Court's interpretation of the provision, it cannot be used to expand the application of an exclusion (the insured vs. insured exclusion) found elsewhere in the policy, in order to exclude coverage for a claim brought *by* a spouse. Cf. Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co., 366 N.W.2d 271, 278 (Minn. 1985) (holding the reasonable expectations doctrine prevents application of an exclusion "hidden" within the definitions section of a policy).

Second, and more fundamentally, even assuming the provision also applies to claims brought by a spouse, Shayna Fayette's claims arise out of her status as an investor in the partnership; they do not arise in any way out of her status as the spouse of Mark Fayette, let alone *solely* out of that status. Nor does her claim seek damages from marital community property, jointly held property, or property transferred from a named insured to a spouse. Thus, the provision is simply not relevant to determining whether Shayna is an insured for purposes of the claims she brought against the Insureds.

It is incongruous to construe the phrase "[t]he . . . spouses . . . of natural persons who are **Insureds** shall be considered **Insureds** under this **Policy**" independent of the

limited grant of coverage which immediately follows it. Yet that is exactly what the Court does. The Court's interpretation of the spouse provision does not comport with general principles of insurance law, which require us to give effect to all provisions in a policy. E.g., Carlson v. Allstate Ins. Co., 734 N.W.2d 695, 699 (Minn Ct. App. 2007). By considering Shayna Fayette an insured for a claim arising out of her status as an investor in the partnership, the Court nullifies the limiting phrase "provided, however, coverage is afforded to such . . . spouses . . . only for a **Claim** arising solely out their status as such" and extends the limited application of the provision beyond its intended purpose. See Canadian Universal Ins. Co. v. Fire Watch, Inc., 258 N.W.2d 570, 572 (Minn. 1977) (indicating a court's task is to construe an insurance policy with the purpose of effectuating the parties' intent).

II

Because the Court erroneously concluded Shayna Fayette's claims were excluded by the insured vs. insured exclusion, it did not address whether that exclusion applies when a lawsuit involves the presence of both an insured plaintiff and a non-insured plaintiff (i.e., covered and non-covered claims). I would reach that question, the answer to which is clear. Minnesota law requires an insurance company to defend its insureds in mixed-claim suits:

> It is axiomatic that the duty to defend is broader than the duty to indemnify. The duty to defend is broader than the duty to indemnify in three ways: (1) the duty to defend extends to every claim that "arguably" falls within the scope of coverage; (2) *the duty to defend one claim creates a duty to defend all claims*; and (3) the duty to defend exists regardless of the merits of the underlying claims.

Wooddale Builders, Inc. v. Md. Cas. Co., 722 N.W.2d 283, 302 (Minn. 2006) (internal citations omitted) (emphasis added); see also Pac. Ins. Co. v. Burnett Title, Inc., 380 F.3d 1061, 1064 (8th Cir. 2004) (applying Minnesota law and recognizing this

-25-

principle).  Because Shayna Fayette's claims were covered by the policy, even though Mark Fayette's were not, Westchester had a duty to defend the Insureds in the Fayette lawsuit.  In reaching a conclusion to the contrary, the district court relied on cases which are contrary to the law in Minnesota, and therefore do not merit discussion.

My disagreement with the Court's conclusion that Shayna Fayette is an insured under the policy also leads me in a different direction with respect to the question whether Westchester is entitled to reimbursement of the defense costs expended in the Fayette suit.  Because Westchester had a duty to defend the Insureds in the Fayette lawsuit, it is not entitled to reimbursement of its defense costs, and the question whether it would be entitled to reimbursement assuming it had no duty to defend is moot.  For the same reason, I disagree with the Court's conclusion that the Insureds are not entitled to coverage fees.

### III

For the reasons stated, I respectfully dissent.  I would affirm the district court on the issue whether Shayna Fayette is an insured under the policy, but reverse with respect to the determination that Westchester did not have a duty to defend the Insureds in the Fayette lawsuit, and remand this matter to the district court for entry of judgment in favor of the Insureds with respect to all issues raised in this appeal.

_____