# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 09-2906

———————

Dawn Carton; James Carton;       *
Jodi Feller; Terry Feller;           *
Cody Medinger; Stephanie Nieland,  *
                                    *
        Appellants,            *
                                    *  Appeal from the United States
      v.                    *  District Court for the
                                    *  Northern District of Iowa.
General Motors Acceptance       *
Corporation, a Corporation doing    *
business as GMAC,             *
                                    *
        Appellee.            *

———————

Submitted: April 12, 2010
Filed: July 13, 2010

———————

Before RILEY, Chief Judge, COLLOTON and BENTON, Circuit Judges.

———————

RILEY, Chief Judge.

Motorcyclists Dawn Carton, James Carton, Jodi Feller, Terry Feller, Cody Medinger, and Stephanie Nieland (collectively, Appellants) brought an action against General Motors Acceptance Corporation (GMAC), arising out of injuries Appellants sustained when they were struck by a leased vehicle driven by Tiffany Gannon. GMAC held the lease on the vehicle driven by Gannon. Appellants sued GMAC, alleging GMAC, as owner of the vehicle, was vicariously liable for Gannon's

negligence, and directly liable for negligently (1) entrusting the vehicle to Gannon, (2) failing to repossess the vehicle after GMAC obtained a replevin judgment due to Gannon's failure to make lease payments, and (3) failing to discover Gannon was impaired and uninsured. The district court[1] granted GMAC's motion to dismiss the claims, finding Iowa Code § 321.493 and 49 U.S.C. § 30106 ("Graves Amendment") barred Appellants' vicarious liability claim and the Graves Amendment also barred Appellants' direct negligence claims. We affirm.

## I.    BACKGROUND
### A.    Factual Background

On December 7, 2005,[2] Gannon leased a 2006 Chevy Cobalt from Ballweg Chevrolet, Inc., in Middleton, Wisconsin. Ballweg Chevrolet thereafter assigned the lease to GMAC. The lease was for a term of 48 months, and Gannon was required to make monthly payments of $205.95. The lease was "scheduled to end one month after the last payment [wa]s due," but the lease provided Gannon could end the lease at any time, and GMAC "may end th[e] lease if [Gannon were] in default." The lease agreement stated Gannon would be in default, "if more than one full monthly . . . payment [wa]s more than 10 days past due." Under the lease, Gannon had the opportunity to cure the default, but if she failed to do so, GMAC had the right to (1) end the lease and require Gannon to pay an early end charge, (2) sue Gannon for damages and to get the vehicle back, and (3) pursue any other remedy permitted by law.

---

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

[2]There is some disagreement as to the commencement date of the lease. Although the complaint alleges the lease began on December 7, 2006, the lease agreement, and an affidavit from Gannon, list December 7, 2005, as the starting date of the lease. In addition, GMAC perfected a security interest in the vehicle on December 10, 2005, further suggesting the lease began on December 7, 2005.

By January 2007, Gannon was no longer making lease payments. GMAC informed Gannon she was in default. On February 27, 2007, GMAC filed a replevin action against Gannon in Wisconsin state court, seeking to repossess the vehicle. On April 20, 2007, the Wisconsin court entered judgment for replevin in favor of GMAC. Gannon continued to drive the vehicle, without insurance, until July 14, 2007.

On the afternoon of July 14, 2007, Appellants were drivers and passengers on three motorcycles traveling westbound on a two-lane highway near Janesville, Wisconsin. Gannon was driving eastbound in the leased vehicle. As Gannon approached the Appellants, she crossed the center lane and collided with all three motorcycles. Five out of the six Appellants suffered serious physical injuries and have permanent physical impairments.

## B.    Procedural Background

Appellants, all residents of Iowa, filed a complaint in the district court against GMAC,[3] pursuant to 28 U.S.C. § 1332. Appellants first alleged GMAC was vicariously liable for Gannon's negligence because Gannon was no longer a lessee on the date of the accident, but, instead, was driving the vehicle with the implied or express consent of GMAC, the owner of the vehicle. Appellants next alleged GMAC was directly liable for Appellants' injuries because GMAC negligently (1) entrusted the vehicle to Gannon, (2) failed to take reasonable steps to enforce its replevin judgment and re-take possession of the vehicle from Gannon, and (3) failed to discover Gannon was driving the vehicle while impaired and without insurance.

GMAC filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). GMAC argued the substantive law of Wisconsin should apply to Appellants' claims, and under Wisconsin law, Appellants' damages would be capped at $50,000, which would be insufficient to meet 28 U.S.C. § 1332's

---

[3]Gannon was not named in the lawsuit, and is not a party to this appeal.

jurisdictional requirement of $75,000 in controversy. GMAC also claimed both the Graves Amendment and Iowa Code § 321.493 barred Appellants' vicarious liability claims, and the Graves Amendment precluded Appellants' negligence claims. Finally, GMAC contended even if the Graves Amendment did not bar Appellants' negligence claims, the claims failed to state a claim upon which relief could be granted.

The district court granted GMAC's motion to dismiss and entered judgment in favor of GMAC. The court first conducted a choice of law analysis and determined Iowa law, rather than Wisconsin law, applied to Appellants' claims, disposing of GMAC's subject matter jurisdiction challenge. The district court next determined the Graves Amendment barred Appellants' vicarious liability claims, finding the lease was still in effect on the date of the accident despite the fact GMAC had obtained a replevin judgment. The court similarly determined Iowa Code § 321.493 barred Appellants' vicarious liability claims because, as the lessee in possession of the vehicle at the time of the accident, Gannon was considered the "owner" of the vehicle under Iowa law. The district court then found the Graves Amendment precluded Appellants' direct negligence claims against GMAC because Appellants "fail[ed] to point to any legal authority imposing a duty on [GMAC] to ensure that its lessees comply with the various duties asserted in the Complaint." Because the district court determined the Graves Amendment barred Appellants' negligence claims, the district court declined to address the merits of the negligence claims. Appellants assert the district court erred in dismissing their claims.

II. DISCUSSION

A. Standard of Review

We review de novo a district court's grant of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). See Northstar Indus., Inc. v. Merrill Lynch & Co., 576 F.3d 827, 831 (8th Cir. 2009). In so doing, we construe the complaint in the light most favorable to the nonmoving party. See id. at 832. "Dismissal is proper when the plaintiff's complaint fails to state a claim upon which relief can be granted." Id. at

831-32 (citing Fed. R. Civ. P. 12(b)(6)). "To survive a motion to dismiss, the factual allegations in a complaint, assumed true, must suffice 'to state a claim to relief that is plausible on its face.'" Id. at 832 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The court accepts as true all factual allegations, but is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" McAdams v. McCord, 584 F.3d 1111, 1113 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. __, 129 S. Ct. 1937, 1950 (2009)).

### B. Choice of Law and Jurisdiction

In the district court, GMAC suggested the substantive law of Wisconsin applied to Appellant's claims, and under Wisconsin law, Appellants could not meet 28 U.S.C. § 1332's amount in controversy requirement because their damages would be capped at $50,000. Although neither party challenges the district court's decision to apply the substantive law of Iowa to Appellants' claims or the court's resulting determination diversity jurisdiction existed, subject matter jurisdiction is a threshold question we must address at the outset. See Sianis v. Jensen, 294 F.3d 994, 997 (8th Cir. 2002). Reviewing the district court's choice of law determination de novo, see Donaldson Co. v. Borroughs Diesel, Inc., 581 F.3d 726, 731 (8th Cir. 2009) (standard of review), we agree with the district court's well-reasoned analysis of Iowa's choice of law rules and particularly Veasley v. CRST Int'l, Inc., 553 N.W.2d 896, 897-99 (Iowa 1996) (applying Iowa law in a negligence action brought by an Iowa resident against the owner of a vehicle that caused an accident which injured the Iowa resident in Arizona). Because Iowa law applies to Appellants' claims, and Iowa law does not impose a $50,000 damages cap on Appellants' claim, we are satisfied diversity jurisdiction exists.

### C. Vicarious Liability

Appellants contend the district court erred in finding the Graves Amendment and Iowa Code § 321.493 barred Appellants' vicarious liability claims. In order to determine whether GMAC may be held vicariously liable for Gannon's negligence,

we must first determine whether the lease agreement between Gannon and GMAC was still in effect on the date of the accident, July 14, 2007. Appellants insist the lease agreement had been terminated prior to July 14, 2007, because Gannon had been in default for seven months and GMAC had obtained a replevin judgment. Appellants alternatively argue, even if the lease were not terminated by the replevin judgment as a matter of law, there is a fact question as to whether the relationship between Gannon and GMAC constituted a lease or whether Gannon was merely driving the vehicle with GMAC's express or implied permission.

The district court found GMAC's replevin judgment in Wisconsin state court did not terminate the lease, and, thus, the lease was still in effect at the time of the accident. The district court reasoned, under Wisconsin law,[4] a replevin judgment "determine[s] only the right to possession of the collateral or leased goods, but such judgment shall not bar any subsequent action for damages or deficiency." Wis. Stat. § 425.205(1)(e). The district court declared, "[W]hen a lessor elects to pursue a replevin judgment, the replevin judgment merely gives a lessor the right to repossess the property subject to the replevin judgment—it does not provide for the termination of any underlying obligation by operation of law."

We agree with the district court that the replevin judgment did not terminate the lease, and we further find the terms of the lease agreement between Gannon and GMAC did not act to terminate the lease. The lease was "scheduled to end one month after the last payment is due." However, Gannon had the option to end the lease at any time, and GMAC had the option to end the lease if Gannon were in default. The lease provided the following remedies to GMAC in the event Gannon defaulted and did not cure her default: (1) "End this lease and require [Gannon] to pay the early end charge"; (2) "Sue [Gannon] for damages and to get the vehicle back"; and (3) "Pursue

_____

[4]GMAC obtained the replevin judgment in Wisconsin state court, and thus, we look to Wisconsin law to determine the effect of the replevin judgment.

any other remedy the law [permits]." It is undisputed GMAC did not exercise its right to end the lease nor require Gannon to pay the early end charge. It is also true that Gannon did not exercise her right under the lease to terminate early, as Gannon retained possession of the vehicle and did not pay an early end charge. Like the district court, we conclude the lease agreement between Gannon and GMAC remained in effect as a matter of law on the date of the accident. We now consider whether Appellants' vicarious liability claims against GMAC are viable under the Graves Amendment and Iowa law.

### 1. Iowa Code § 321.493

In their complaint, Appellants alleged GMAC, as the "owner" of Gannon's leased vehicle, was vicariously liable for Gannon's negligence under Iowa Code § 321.493. The district court granted GMAC's motion to dismiss Appellants' vicarious liability claims, finding Iowa Code § 321.493 and the Graves Amendment barred Appellants' claims. Appellants insist the district court erred in dismissing their vicarious liability claims under § 321.493 because "Gannon had no right to use and possess the vehicle under any existing lease" on the date of the accident.

Section 321.493 states,

[I]n all cases where damage is done by any motor vehicle by reason of negligence of the driver, and driven with the consent of the owner, the owner of the motor vehicle shall be liable for such damage. For purposes of this subsection, "owner" means the person to whom the certificate of title for the vehicle has been issued or assigned or to whom a manufacturer's or importer's certificate of origin for the vehicle has been delivered or assigned. *However, if the vehicle is leased, "owner" means the person to whom the vehicle is leased, not the person to whom the certificate of title for the vehicle has been issued or assigned or to whom the manufacturer's or importer's certificate of origin for the vehicle has been delivered or assigned. For purposes of this subsection, "leased" means the transfer of the possession or right to possession of*

-7-

*a vehicle to a lessee for a valuable consideration for a continuous period of twelve months or more, pursuant to a written agreement.*

Iowa Code § 321.493(1)(a) (emphasis added).

The clear and unambiguous language of § 321.493 demonstrates Gannon, and not GMAC, was the owner of the vehicle for purposes of owner liability under Iowa law. In exchange for a promise to make monthly payments, Gannon obtained possession of the vehicle for a period of 48 months pursuant to a written lease agreement. Gannon remained in continuous possession of the vehicle pursuant to the lease agreement until the date of the accident. Therefore, Appellants' attempt to avoid the implications of § 321.493 must fail. See Beganovic v. Muxfeldt, 775 N.W.2d 313, 320 (Iowa 2009) ("[T]he legislature specifically excluded a lessor of a motor vehicle from the meaning of an 'owner' for the purposes of determining civil liability.").

### 2.    The Graves Amendment

Even if Iowa Code § 321.493 did not prohibit Appellants' vicarious liability claims against GMAC, the Graves Amendment would preempt Iowa law and prohibit Appellants' claims. The Graves Amendment provides,

An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle *during the period of the rental or lease*, if—

(1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and

(2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

49 U.S.C. § 30106(a) (emphasis added).

Appellants contend the Graves Amendment does not bar their vicarious liability claims against GMAC because Gannon's failure to make lease payments and GMAC's replevin judgment terminated Gannon's rights to possess and use the leased vehicle. Appellants argument fails for the reason we stated above—at the time of the accident, Gannon's lease agreement with GMAC was still in effect. Absent any direct negligence or criminal wrongdoing by GMAC, the Graves Amendment protects GMAC from owner liability during the period of the lease. The district court did not err in dismissing Appellants' vicarious liability claims.

### D.      Negligence

We next consider Appellants' argument that the district court erroneously dismissed Appellants' direct negligence claims against GMAC. Appellants claim GMAC is liable for negligently entrusting the vehicle to Gannon because GMAC failed to "diligently reposess[] the vehicle after [GMAC] knew or should have known that Gannon was driving the vehicle without insurance and was a danger to the public."

Although the Graves Amendment prohibits vicarious liability claims against owners of leased vehicles, the Graves Amendment contains a savings clause which allows an owner of a leased vehicle to be found directly liable for the owner's negligence or criminal wrongdoing. See 49 U.S.C. § 30106(a)(2). The district court adopted the interpretation of § 30106(a)(2) as set forth in Dubose v. Transp. Enter. Leasing, LLC, No. 6:08-cv-385, 2009 WL 210724 (M.D. Fla. Jan. 27, 2009). The Dubose court synthesized several state and federal court decisions interpreting the Graves Amendment savings clause and made the following observation:

> Absent some evidence of a lessor's failure to properly maintain a vehicle which it has expressly agreed to maintain pursuant to a lease agreement, or some similar active negligence on the part of the lessor, the conclusion reached by these courts is that § 30106(a)(2) is rarely applicable and should be cautiously applied in light of Congress' clear intent to forestall

suits against vehicle leasing companies. Indeed, unless a State specifically imposes a legal duty on lessors to ensure that their lessees maintain adequate insurance or to ensure that their lessees have adequate driving records, § 30106(a)(2) only appears to apply to claims predicated on criminal wrongdoing and negligent maintenance claims—not claims of negligent entrustment.

Id. at *4 (internal citation omitted).

Appellants argue the district court too narrowly interpreted the term "negligence" to find the Graves Amendment only permitted claims of "negligent maintenance" against a vehicle's owner, and not claims of "negligent entrustment." The district court did not dismiss Appellants' direct negligence claims solely because Appellants failed to allege GMAC was negligent in maintaining the vehicle; the district court also found "[Appellants] fail[ed] to point to any legal authority imposing a duty on [GMAC] to ensure that its lessees comply with the various duties asserted in [Appellants'] Complaint." We do agree with Appellants that the term "negligence" as used in the Graves Amendment savings clause is a broad term, and nothing indicates the "negligence" term should be construed narrowly to exclude only claims for negligent maintenance.

The rules of statutory construction mandate, when a "'statute's language is plain, the sole function of the courts is to enforce it according to its terms.'" Owner-Operator Indep. Drivers Ass'n v. United Van Lines, LLC, 556 F.3d 690, 693 (8th Cir. 2009) (quoting United States v. Ron Pair Enter., 489 U.S. 235, 241 (1989)). Likewise, "[w]here the plain meaning of a statute is clear, 'we are not free to replace it with an unenacted legislative intent.'" Id. (quoting INS v. Cardoza Fonseca, 480 U.S. 421, 453 (1987) (Scalia, J., concurring)). A term "left undefined by [a] statute[] carries its ordinary meaning." Crawford v. Metro. Gov't of Nashville and Davidson County, 555 U.S. __, 129 S. Ct. 846, 850 (2009). Applying these rules of statutory construction to the Graves Amendment, we find no statutory basis for narrowing the

definition of the broad term "negligence" or giving it any definition other than its ordinary meaning. See Lamie v. United States Trustee, 540 U.S. 526, 542 (2004) ("If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent.").

The question then becomes whether Iowa courts would recognize a cause of action based on a lessor's negligent failure to repossess a vehicle. We are unaware of any cases in Iowa or anywhere else addressing this particular issue. However, the Colorado Supreme Court has recognized a duty on the part of an entrustor "to take reasonable action to terminate the entrustment if the entrustor acquires information that such an unreasonable risk exists or has come into being after the entrustment and the entrustor has the legal right and ability to end the entrustment." Casebolt v. Cowan, 829 P.2d 352, 360 (Colo. 1992). In Casebolt, an employer entrusted a vehicle to an employee to drive to and from an out-of-town worksite. See id. at 354. On the day the employee was set to return home, he consumed alcohol at the worksite and with his employer and co-workers during lunch, and the employer was aware the employee intended to consume more alcohol after lunch. See id. The employer did not revoke the entrustment nor discourage the employee from drinking. See id. at 354-55. That evening, the employee drove the employer's vehicle home and was killed in a car accident caused by the employee's intoxication. See id. at 355. The employee's wife sued the employer, alleging the employer was liable under a theory of negligent entrustment. See id. The court found the employer "had a duty to take reasonable action to terminate the entrustment . . . if . . . he possessed knowledge that [the employee] was likely to use the vehicle in a manner involving unreasonable risk of physical harm to himself or others." Id. at 361.

We cannot say for certain whether the Iowa Supreme Court would recognize Casebolt's theory of negligent entrustment, but even if we assume for purposes of this opinion that the Iowa Supreme Court would do so, we would nevertheless find Appellants' allegations fail to rise to the level of negligent entrustment. There is no

question GMAC was aware that Gannon was financially irresponsible—Gannon failed to make her lease payments for several months causing GMAC to obtain a replevin judgment. Appellants also allege GMAC was aware Gannon was driving the vehicle without insurance. However, Gannon's financial irresponsibility and failure to obtain insurance did not pose an unreasonable risk of physical harm to others. Without knowledge that Gannon's driving posed some unreasonable risk of physical harm to others, GMAC cannot be held liable under Casebolt's theory of negligent entrustment. We agree with the district court that Appellants have "fail[ed] to point to any legal authority imposing a duty on [GMAC] to ensure that its lessees comply with the various duties asserted in the Complaint." The district court did not err in dismissing Appellants' direct negligence claims against GMAC.

## III.  CONCLUSION

For the reasons stated above, we affirm the judgment of the district court.

_____