# United States Court of Appeals

### For the Eighth Circuit

_____

No. 14-3415

_____

Eric Wong

*Plaintiff - Appellant*

v.

Minnesota Department of Human Services; Emily Johnson Piper, in her capacity
as Commissioner of the Minnesota Department of Human Services; Hennepin
County Human Services and Public Health Department; Rex A. Holzemer, in his
capacity as Director of the Hennepin County Human Services and Public Health Department

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 21, 2015
Filed: April 19, 2016

_____

Before WOLLMAN, BEAM, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

After the Minnesota Department of Human Services denied Eric Wong "shelter needy" benefits and stated that it would revoke other benefits that Wong had been receiving, Wong filed suit in federal court. Wong sought review of the state agency's decision. In addition, he raised claims under 42 U.S.C. § 1983 and alleged violations of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). The district court dismissed Wong's suit. Wong now appeals. We affirm in part, vacate in part, and remand for further consideration.

I.

Eric Wong suffers from Ehlers-Danlos Syndrome, a rare genetic condition typified by joint instability and chronic musculoskeletal pain.[1] This condition causes frequent partial dislocation of Wong's shoulders, elbows, hips, knees, and other joints. Wong uses a wheelchair when traveling, and his disease can cause him to faint while performing tasks that require him to stand upright. As a result of these and other symptoms, Wong is highly susceptible to injury and pain from simple life activities.

Wong began receiving income from the Social Security Administration on the basis of his disability in 2011. Shortly thereafter, he applied for Minnesota Supplemental Aid ("MSA"). The supplemental aid programs offered by the state include stipends for medically prescribed diets, necessary home repairs, certain services, and housing costs. The Minnesota Department of Human Services supervises administration of these programs by county agencies. Minn. Stat. §§ 256D.53, 256D.395, subdiv. 2. The Hennepin County Human Services and Public Health Department ("HCHS"), the agency responsible for administering the program

---

[1] Because this case comes to us on appeal in part from a dismissal for failure to state a claim, we take as true the factual allegations in Wong's complaint. *See Bissonette v. Haig*, 776 F.2d 1384, 1386 (8th Cir. 1985), *aff'd*, 485 U.S. 264 (1988).

in Wong's county, initially denied Wong benefits but later approved some supplemental aid. Wong continued to petition for additional funds, including "shelter needy" benefits, an allowance designed for individuals whose monthly shelter costs exceed 40 percent of gross income. *See* Minn. Stat. § 256D.44, subdiv. 5(f)(3). HCHS refused his requests. After several months, HCHS informed Wong that it had closed his case because his expected net income from social security exceeded the MSA eligibility limit. Wong filed an administrative appeal, arguing that HCHS used an erroneous estimate of his income from social security to calculate his net income. He also claimed that the state improperly continued to deny him "shelter needy" benefits. The parties resolved all issues except for Wong's eligibility for "shelter needy" benefits prior to his hearing before the human services judge.

At the hearing, HCHS argued that Wong was ineligible for "shelter needy" benefits because he had not undergone the statutorily prescribed Personal Care Assistance ("PCA") assessment, an in-person evaluation conducted by a county public health nurse or a certified assessor for the purpose of determining a person's eligibility for home and community-based services. *See* Minn. Stat.§ 256B.0659, subdivs. 3a, 4. Wong, in turn, contended that he was eligible despite not having the PCA assessment because the assessment would be too dangerous in light of his medical condition. Ultimately, the human services judge determined that HCHS was correct to deny Wong benefits because the assessment was mandatory under Minnesota law. In response to Wong's safety concerns, the judge concluded that Wong could undergo the assessment with reasonable accommodations. The human services judge thus recommended that the Commissioner of the Minnesota Department of Human Services affirm HCHS's decision to refuse Wong "shelter needy" benefits unless and until he received an assessment. The Commissioner adopted this decision on October 30, 2013.

Wong served the defendants his notice of appeal on November 27, 2013. On December 9, he filed suit in federal district court, requesting review of the

-3-

Commissioner's order, asserting claims under 42 U.S.C. § 1983, and alleging violations of the ADA and the RA. In his appeal from the Commissioner's decision, Wong contended that he qualified for "shelter needy" benefits under Minnesota law and that HCHS improperly continued to deny aid based on the Commissioner's erroneous conclusion that his failure to undergo the allegedly unsafe assessment rendered him ineligible. Wong also argued that HCHS and DHS violated the ADA and RA by unlawfully excluding him from Minnesota's benefit program as a result of his inability to complete a PCA assessment. Under § 1983, Wong alleged that the defendants denied him the procedural due process right to notice and a meaningful opportunity to be heard. Finally, Wong asserted that the agencies denied him equal protection under the law. The district court dismissed the complaint with prejudice, holding that (1) the court lacked jurisdiction to review directly the appeal from the Commissioner's order, (2) Wong's appeal from the Commissioner's decision was untimely, (3) Wong was precluded from bringing his claims under the ADA and RA because the human services judge considered the same set of facts in approving the denial of benefits, and (4) Wong failed to state a due process or equal protection claim. Wong now appeals.

II.

We review *de novo* the grant of a motion to dismiss based on lack of jurisdiction. *Deuser v. Vecera*, 139 F.3d 1190, 1191 (8th Cir. 1998). The same standard applies to dismissals under Federal Rule of Civil Procedure 12(b)(6) based on a plaintiff's failure to state a claim. *Harris v. St. Louis Police Dep't*, 164 F.3d 1085, 1086 (8th Cir. 1998). In reviewing an appeal from a grant of a motion to dismiss under Rule 12(b)(6), "we construe the complaint in the light most favorable to the nonmoving party." *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 715-16 (8th Cir. 2011) (quoting *Carton v. Gen. Motors Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010). "To survive a motion to dismiss, the factual allegations in a complaint, assumed true, must suffice to state a claim to relief that is plausible on its face." *Id.*

at 716 (quoting *Northstar Indus., Inc. v. Merrill Lynch & Co.*, 576 F.3d 827, 832 (8th Cir. 2009). "We assess plausibility considering only the materials that are necessarily embraced by the pleadings and exhibits attached to the complaint, and draw[ing] on [our own] judicial experience and common sense." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (alterations in original) (internal citations omitted).

A.

We begin with the court's decision dismissing for lack of jurisdiction Wong's appeal from the Commissioner's order. When a federal district court has original jurisdiction over a civil action, the court may exercise supplemental jurisdiction over all state-law "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Here, the district court determined that the appeal from the Commissioner's decision arose from the "same set of facts" as Wong's ADA and RA claims. Nevertheless, the court concluded that it lacked jurisdiction over the appeal from the Commissioner's order for several reasons. We address each reason in turn, and we conclude that the court erred by finding that it was barred from exercising supplemental jurisdiction over Wong's state-law claim.

First, we reject the court's conclusion that Wong's appeal from the Commissioner's decision was untimely because Wong did not file notice and proof of service with the court until December 9, 2013, more than thirty days after the Commissioner issued the order. This conclusion ignores the text of the relevant filing statute—a statute that the parties agree governs the timeliness of Wong's appeal, even to a federal district court. Minnesota law states that an aggrieved party may appeal from a Commissioner's order:

-5-

by serving a written copy of a notice of appeal upon the commissioner and any adverse party of record within 30 days after the date the commissioner issued the order, the amended order, or order affirming the original order, and by filing the original notice and proof of service with the court administrator of the district court.

Minn. Stat. § 256.045, subdiv. 7. Importantly, a straightforward reading of the text shows that the thirty-day period modifies *only* the service requirement presented in the first half of the statute. Filing notice and proof of service in a court is a separate requirement for which the statute provides no comparable time limitation. Had the legislature wished to phrase the statute so that the requirement applied to *both* service and filing, it could have written the statute in a manner that indicated the limit encompassed both actions. *See Minnesota v. Struzyk*, 869 N.W.2d 280, 288 (Minn. 2015) (adopting the plain meaning of the text of a statute and noting that the legislature could have constructed the statute differently if it had intended a different meaning).

Although we think the statute's meaning is plain, to the extent there is any ambiguity in the statute's meaning, we find instructive the last-antecedent canon of construction suggesting that a limiting clause or phrase "should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003); *Larson v. Minnesota*, 790 N.W.2d 700, 705 (Minn. 2010). Here, the thirty-day limit follows the requirement of service. The canon thus suggests that it modifies only that action. We disagree with the dissent's view that this statute is better interpreted using the series-qualifier canon. First, the series-qualifier canon generally applies when a modifier precedes or follows a list, not when the modifier appears in the middle. *See, e.g.*, *Porto Rico Ry., Light & Power Co. v. Mor*, 253 U.S. 345, 348 (1920); *In re Estate of Pawlik*, 845 N.W.2d 249, 252 (Minn. Ct. App. 2014) (noting that a *prepositive* or *postpostive* modifier of a series may apply to all of the items in that series) (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012)). Second, even if the series-qualifier canon

is relevant, the Supreme Court has applied this canon to rebut the last-antecedent rule only when "there [wa]s no reason consistent with any discernible purpose of the statute to apply" the limiting phrase to the last antecedent alone. *United States v. Bass*, 404 U.S. 336, 341 (1971).

Here, however, we *do* discern a reason to apply the thirty-day limit to service alone. Applying this limit to service is consistent with a deeply-rooted principle in Minnesota that civil actions generally commence "when the summons is served upon th[e] defendant" and not upon any filing made in court. Minn. R. Civ. P. 3.01. Under Minnesota's Rules of Civil Procedure, mere service on the defendant commences the suit for statute of limitations purposes, regardless of whether any filing has been made. *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1068 (8th Cir. 2004) (applying Minnesota law); 1 David F. Herr & Roger S. Haydock, *Minnesota Practice Series: Civil Rules Annotated* § 3.3 (5th ed. 2009). This somewhat anomalous "hip-pocket" regime is traceable to Minnesota's days as a territory, and it has been praised for allowing parties to "circumvent court filing fees altogether and consume precisely zero judicial resources." Joe Muchlinski, *Constraining Minnesota's Hip-Pocket Regime: Too Much or Not Enough? (or Both?) (or Neither?)*, 41 Wm. Mitchell L. Rev. 1556, 1560 (2015). Further, the Minnesota Supreme Court has stated that "the ordinary rules of civil procedure apply [to a claim] unless clearly inconsistent with the statute." *Meeker v. IDS Prop. Cas. Ins. Co.*, 862 N.W.2d 43, 46-47 (Minn. 2015) (alteration in original). Thus, because Minnesota generally considers suits to commence upon service alone and because Wong's appeal commences a new civil action, we have no trouble concluding that section 256.045 made service the relevant event for the thirty-day window. And the parties do not dispute that Wong served the defendants with a notice of appeal within thirty days of the Commissioner's order.

The Minnesota Supreme Court considered a statute similar to section 256.045, subdivision 7 in *Kearns v. Julette Originals Dress Co.*, 126 N.W.2d 266 (Minn. 1964). There, the parties disputed whether a thirty-day period for appeal applied to both service and filing or to service alone. *Id.* at 267. The Court, in considering the issue, described the original version of the relevant statute, a statute structured very much like the one before us now: "The appealing parties shall also serve a copy of such written notice of appeal upon all adverse parties within the time limited for appeal, and file the original thereof with the Industrial Commission." *Id.* at 267 n.6. That language prompted the Minnesota Industrial Commission to conclude that *only* service had to occur within the statutory time to appeal. *Id.* at 267. For reasons not relevant here, the Minnesota Supreme Court disposed of a party's effort to secure review of that decision. *Id.* at 267 n.5. The Court took up an appeal only *after* the legislature passed a new version of the statute. The new version read: "Within the 30-day period for taking an appeal, the appellant shall: (1) Serve a copy of the notice of appeal on each adverse party; and (2) File the original notice, with proof of service . . . with the commission." *Id.* at 267 (quoting Minn. Stat. § 176.421). The Court distinguished the Industrial Commission's interpretation of the prior version and noted that the new language was "clear and explicit" in applying the time limit to both service and filing. *Id.* at 268. In light of the new language, the Court held that it was "constrained" to apply the time limit to both actions. *Id.* at 269. Notably, the Court reached this decision only after reaffirming the general rule that Minnesota courts "in construing a statute granting a right of appeal . . . should seek to avoid forfeiture of the right." *Id.*

Since *Kearns*, no Minnesota courts have considered squarely whether the thirty-day limit applies to both service and filing under section 256.045, subdivision 7. However, we take some guidance from *Reynolds v. Minnesota Department of Human Services*, 737 N.W.2d 367 (Minn. Ct. App. 2007), one of the few published decisions considering a timeliness-of-appeal challenge under the statute. In *Reynolds*,

the Minnesota Court of Appeals noted that both service and filing occurred on the same allegedly untimely day. *Id.* at 369. Notwithstanding this fact, the court stated that failure to *commence* an appeal within the prescribed time limits would be problematic. *Id.* at 369. The court then dedicated its timeliness-of-appeal analysis to the question whether the notice of appeal *was served* upon the defendant within the relevant thirty-day window. *Id.* at 369-72.

The dissent makes several persuasive arguments regarding problems generally associated with hip-pocket regimes that leave open the time for making initial filings in court, but these arguments do not allow us to ignore the plain meaning of the statute that accords with Minnesota's general practice. As a federal court reviewing such questions, "our role is to interpret state law, not to fashion it." *See Williamson v. Hartford Life & Acc. Ins. Co.*, 716 F.3d 1151, 1154 (8th Cir. 2013). And, as highlighted above, the Minnesota Supreme Court has cautioned that courts reviewing these statutes "should seek to avoid forfeiture of the right" to appeal. *Kearns*, 126 N.W.2d at 269. We also disagree with the dissent's concerns about applying the thirty-day limit only to service. As a practical matter, a plaintiff has little incentive to delay filing an appeal from the allegedly erroneous decision of the Commissioner. In addition, courts have at their disposal other equitable means of dismissing suits for unreasonable and unexcused delay. *See, e.g.*, *Whitfield v. Anheuser-Busch, Inc.*, 820 F.2d 243, 244-45 (8th Cir. 1987) (discussing laches); *accord Morales v. Bezy*, 499 F.3d 668, 671 (7th Cir. 2007) (discussing laches as barring an appeal).[2] In sum, because Wong served the defendants with a notice of appeal on November 27, less

---

[2]We note that Minnesota courts and federal courts exercising supplemental jurisdiction may have at their disposal at least one other means for placing an outside limit on the time to file in court. Minnesota courts generally draw upon the state's Rules of Civil Procedure to fill gaps left by the state legislature in drafting a statute. *See Meeker*, 862 N.W.2d at 46-47. Thus, Minnesota courts could invoke Rule 5.04's requirement that a suit be filed with the court within one year of timely commencement by service. Minn. R. Civ. P. 5.04(a).

than thirty days after the Commissioner's October 30 decision, and because no undue delay accompanied Wong's initial filing with the district court, we conclude that his appeal was timely. We thus hold that the district court erred by dismissing Wong's appeal on this basis.

We also reject the Department of Human Services's argument that the district court lacked authority to exercise jurisdiction because the *Rooker-Feldman* doctrine barred review of the state agency decision. *See D.C. Ct. App. v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 416 (1923). As the Court explained in *Verizon Maryland, Inc. v. Public Service Commission of Maryland*:

> The *Rooker-Feldman* doctrine merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to this Court, *see* § 1257(a). The doctrine has *no application* to judicial review of executive action, including determinations made by a state administrative agency.

535 U.S. 635, 644 n.3 (2002) (emphasis added). Accordingly, the doctrine does not apply.

Finally, we disagree with the district court's conclusion that section 256.045 of the Minnesota statutes prevented the court from exercising supplemental jurisdiction over the appeal from a state agency's decision. In relevant part, this statute reads: "[A]ny party who is aggrieved by an order of the commissioner of human services . . . may appeal the order to the district court of the county responsible for furnishing assistance . . . ." Minn. Stat. § 256.045, subdiv. 7. Another provision of the same section notes that the order of the Commissioner is "conclusive upon the parties unless appeal is taken in the manner provided in subdivision 7." *Id.* subdiv. 5.

The district court relied on this language to hold that it lacked jurisdiction. This decision was tantamount to a holding that the federal court lacked the power to exercise jurisdiction because the state statute required the aggrieved party to seek review only in state court. For the reasons discussed below, we conclude that such an interpretation runs afoul of the well-established notion that "a state statute cannot proscribe or limit federal jurisdiction" in that manner. *Swan v. Monette's Estate*, 400 F.2d 274, 276 (8th Cir. 1968) (per curiam) (Lay, J., concurring). This statement reflects the long-established principle that a state right "cannot be withdrawn from the cognizance of [a] Federal court by any provision of State legislation that it shall only be enforced in a State court." *Ry. Co. v. Whitton's Adm'r*, 80 U.S. (13 Wall.) 270, 286 (1871). "Whenever a general rule as to property or personal rights, or injuries to either, is established by State legislation, its enforcement by a Federal court in a case between proper parties is a matter of course, and the jurisdiction of the court, in such case, is not subject to State limitation." *Id.*

A federal court's authority to exercise jurisdiction is defined by the sources of the court's power, the Constitution and federal statutory grants of jurisdiction, not the acts of state legislatures. *See Duchek v. Jacobi*, 646 F.2d 415, 419 (9th Cir. 1981). Under 28 U.S.C. § 1367(a), a federal court has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." A federal court may decline to exercise this authority under four circumstances enumerated in the statute: (1) if the state "claim raises a novel or complex issue of [s]tate law," (2) if the state "claim substantially predominates over the claim or claims over which the district court has original jurisdiction," (3) if "the district court has dismissed all claims over which it has original jurisdiction," or (4) if

-11-

"other compelling reasons for declining jurisdiction" exist.[3] 28 U.S.C. § 1367(c). In addition, a federal court should abstain from deciding state-law claims if the abstention doctrines articulated by the Supreme Court apply. *Int'l Coll. of Surgeons*, 522 U.S. at 174. However, in the absence of these circumstances, federal law affords a federal court the power to exercise supplemental jurisdiction over a state-law claim if it "derive[s] from a common nucleus of operative fact" as a claim otherwise within the court's jurisdiction. *Id.* at 165 (alteration in original) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). Such federal jurisdiction "generally encompasses judicial review of state administrative decisions." *Id.* at 169. Indeed, the Supreme Court has explained: "There is nothing in the text of § 1367(a) that indicates an exception to supplemental jurisdiction for claims that require on-the-record review of a state or local administrative determination." *Id.*

In the face of this well-established principle permitting federal review, Minnesota's statute outlines only a state-court mechanism for appeal; it does not contemplate federal review, much less the effect of such review on the finality of the Commissioner's decision. Based on this omission, the district court determined that the statute precluded the exercise of federal jurisdiction. We disagree.

We are not the first court to confront a state statute that contemplates only state-court review of administrative action. The Third Circuit confronted a similar issue in *Hindes v. F.D.I.C.* and concluded that a state statute providing for review of a given controversy only in state court could not be read to undermine a federal court's authority to entertain the dispute. 137 F.3d 148, 168 n.15 (3d Cir. 1998). The Ninth Circuit reached the same conclusion in *BNSF Railway Co. v. O'Dea*, 572 F.3d

---

[3]The "other compelling reasons" include judicial economy, convenience, fairness, and comity. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172-73 (1997).

785 (9th Cir. 2009). There, the court found that a federal court had jurisdiction notwithstanding a Montana statute's command that a petition for review "*must* be filed in the [state] district court for the county." *Id.* at 788 (alteration in original) (emphasis added) (quoting Mont. Code. Ann. § 2-4-702(2)(a)). In a third example, the Fifth Circuit in *Bradberry v. Jefferson County* analyzed the critical question posed before the district court: "[D]oes a [state] statute that identifies which state court is to hear a certain case prevent a federal district court . . . from exercising supplemental jurisdiction over the claim?" 732 F.3d 540, 554 (5th Cir. 2013). The Fifth Circuit answered no, holding that "[w]hatever [the state statute] means for state court lawsuits, it is no barrier to the exercise of supplemental jurisdiction in federal court." *Id.* at 554-55.

We adopt a similar view here in interpreting section 256.045, subdivision 7. Under this view, subdivision 7 lays out one permissible route through which an aggrieved party may appeal from the Commissioner's order and thus prevent it from becoming final, but it does not strip the federal court of its authority to hear the same appeal through the exercise of supplemental jurisdiction. This view ensures that the statute does not pose a barrier to the federal court's authority to exercise jurisdiction pursuant to the Supreme Court's decision in *International College of Surgeons*. *Cf. BNSF Ry. Co.*, 572 F.3d at 789 (noting that nothing in a state statute led the court to believe "that the state even contemplated, intended, or attempted to affect federal jurisdiction" and that the statute "could not have succeeded if it had").

Because the district court improperly concluded that it lacked jurisdiction based solely on the state statute, the district court failed to grapple with whether it *should* exercise supplemental jurisdiction under 28 U.S.C. § 1367 or whether any

-13-

abstention doctrine applied.[4]  We recognize that the court very well could have declined to exercise supplemental jurisdiction.  But for present purposes, this fact is of no moment.  *International College of Surgeons* dictates that the court may reach this decision only after considering the four factors enumerated in the federal supplemental-jurisdiction statute or after determining that one of the abstention doctrines applies.  522 U.S. at 174; *accord McLaurin v. Prater*, 30 F.3d 982, 985 (8th Cir. 1994).  And here, as discussed, the court instead determined that it could not exercise jurisdiction based *only* on the mistaken belief that the state law precluded any exercise of federal jurisdiction.  In light of this error, Wong's timely appeal to a court of competent jurisdiction, and the district court's statement that the state-law claim arose from the "same set of facts" as Wong's RA and ADA claims, we vacate the decision dismissing the supplemental state-law claim and remand for further consideration.  *See Int'l Ass'n of Firefighters of St. Louis v. City of Ferguson*, 283 F.3d 969, 976 (8th Cir. 2002) (vacating and remanding for the district court to consider the § 1367 factors in the first instance).

## B.

We next turn to the district court's dismissal of Wong's claims under the ADA and RA.  The district court did not address the merits of these claims, but rather determined that the claims were precluded because the human services judge had considered the same set of facts and determined that the ADA and RA did not negate the PCA assessment requirement for "shelter needy" allowances.  We review the application of res judicata, or claim preclusion, *de novo*.  *St. Paul Fire & Marine Ins. Co. v. Compaq Comput. Corp.*, 457 F.3d 766, 770 (8th Cir. 2006).  We apply the

---

[4]Like the Supreme Court in *International College of Surgeons*, "[w]e express no view on th[ese] matters, but think it the preferable course to allow the [district court] to address them in the first instance."  522 U.S. at 174.

-14-

same *de novo* standard when reviewing preclusion under collateral estoppel. *Ginters v. Frazier*, 614 F.3d 822, 825 (8th Cir. 2010).

This court generally affords the Commissioner's factfinding the same preclusive effect as would be afforded by the state courts. *Plough v. W. Des Moines Cmty. Sch. Dist.*, 70 F.3d 512, 515, 517 (8th Cir. 1995). "Claim preclusion, or res judicata, 'bars relitigation of the same claim between parties or their privies where a final judgment has been rendered upon the merits by a court of competent jurisdiction.'" *Id.* at 517 (quoting *Smith v. Updegraff*, 744 F.2d 1354, 1362 (8th Cir. 1984)). Under Minnesota law, res judicata applies if: "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; [and] (4) the estopped party had a full and fair opportunity to litigate the matter." *St. Paul Fire & Marine Ins. Co.*, 457 F.3d at 770 (quoting *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004)). When all four elements are satisfied, a judgment bars relitigation of a claim. Likewise, "[u]nder Minnesota law, collateral estoppel, or issue preclusion, precludes the relitigation of issues that are identical to issues previously litigated and that were necessary and essential to the prior judgment." *Minneapolis Cmty. Dev. Agency v. Buchanan*, 268 F.3d 562, 566 (8th Cir. 2001). "Collateral estoppel is available where: (1) the issues are identical to those in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party in the previous action; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issues." *Id.* (quoting *Lyon Fin. Servs., Inc. v. Waddill*, 625 N.W.2d 155, 158-59 (Minn. Ct. App. 2001)).

Here, the district court determined that the Commissioner's order barred the ADA and RA claims because the Commissioner's order was, in the court's view, a final, unappealed decision entitled to preclusive effect. For the reasons discussed in the previous section, we disagree. The Commissioner's order had not become

-15-

conclusive on the matter because the district court had supplemental jurisdiction over the timely appeal of the Commissioner's decision, even if the court ultimately could have declined to exercise it pursuant to § 1367(c). *Plough*, 70 F.3d at 517 & n.11. Wong properly appealed to a court of competent jurisdiction, and the Commissioner's decision thus never became final such that it warranted preclusive effect.[5] *St. Paul Fire & Marine Ins. Co.*, 457 F.3d at 770 (noting that, under Minnesota law, the judgment must be final to be preclusive).

The appellees nevertheless contend that our opinion in *Alexander v. Pathfinder, Inc.*, 91 F.3d 59 (8th Cir. 1996), requires us to uphold the district court's decision and find that the Commissioner's order precluded review of the ADA and RA claims.[6] However, the facts of *Alexander* differ significantly from the present case. Although *Alexander* is similar in that a party aggrieved by the decision of the state's Department of Human Services turned to a federal district court for relief instead of appealing the agency's decision to a state court, the plaintiff in *Alexander* did not include in his suit any direct appeal from the agency's determination. *Id.* at 61. Accordingly, the administrative decision had become the final decision of the state agency. *Plough*, 70 F.3d at 517 & n.11. The same cannot be said here because Wong timely appealed the state agency's decision to a court of competent jurisdiction. In light of this critical distinction, we conclude that the *Alexander* decision does not bind us on the legal question whether the state agency's decision precludes a federal

---

[5]Wong does not allege that he lacked a "full and fair opportunity" to litigate his ADA and RA claims before the human services judge. We take no position on this issue.

[6]The defendants also cite our *per curiam* decision in *Day v. Minnesota*, 354 F. App'x 272, 273 (8th Cir. 2009) (unpublished), affirming, without analysis, a dismissal based on preclusion. However, we are not bound by this decision, as "unpublished opinions carry no precedential value in our circuit." *United States v. Marston*, 517 F.3d 996, 1004 n.5 (8th Cir. 2008); 8th Cir. R. 32.1A.

court from conducting a later, independent review. Because the state agency's decision was not final in Wong's case, we hold that the district court erred by finding that Wong's ADA and RA claims were precluded.[7]

C.

Finally, we address the § 1983 claims that the court dismissed pursuant to Rule 12(b)(6). We review this dismissal *de novo*. *Harris*, 164 F.3d at 1086. "To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States . . ." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). When a plaintiff fails to state a violation of a right secured by the Constitution and laws of the United States, a § 1983 claim cannot succeed. *Clay v. Conlee*, 815 F.2d 1164, 1169 (8th Cir. 1987); 42 U.S.C. § 1983. The district court dismissed Wong's claims alleging violations of his rights to due process and equal protection, finding that Wong had not alleged sufficiently any violation of his constitutional rights.

In his complaint, Wong alleged that the state agencies responsible for administering the MSA program denied him due process by failing to comply with the Minnesota laws governing the MSA program. Specifically, he alleged that the defendants (1) failed to request verification of his eligibility for "shelter needy" benefits and (2) failed to issue either MSA "shelter needy" benefits to Wong or a written denial within 60 days of his application. We agree with the district court's

---

[7]The district court did not address the appellees' alternative arguments for dismissal of the ADA and RA claims. We likewise take no position on these arguments but rather remand for consideration by the district court.

conclusion that these allegations failed to state a due process or equal protection claim under the Fourteenth Amendment of the Constitution.

To assert successfully a procedural due process claim, Wong had to plead both that he was deprived of some life, liberty, or property interest protected by the Constitution and that he was deprived of that property interest without sufficient process. *See Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001); *Johnson v. City of Minneapolis*, 152 F.3d 859, 861 (8th Cir. 1998). Here, even if Wong had an interest in "shelter needy" benefits sufficient to trigger due process, his complaint makes clear that he received all the process that was due. The state's procedures only needed to satisfy the minimum requirements of the Due Process Clause of the Constitution. *See Griffin-Bey v. Bowersox*, 978 F.2d 455, 457 (8th Cir. 1992). The mere fact that the state had established certain statutory review procedures did not transform those procedures into substantive interests entitled to federal constitutional protection. *See Marler v. Mo. State Bd. of Optometry*, 102 F.3d 1453, 1457 (8th Cir. 1996) (finding no due process violation when the defendant failed to comply with requirements of a state's administrative law). Due process, at its heart, requires only "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). This flexible concept "calls for such procedural protections as the particular situation demands." *Id.* at 334. Wong admitted in his complaint that he received a hearing before a human services judge when he appealed from the denial of "shelter needy" benefits. Minnesota law specifically provides him with the opportunity to contest the Commissioner's decision before a state court. Minn. Stat. § 256.045. And as discussed above, pursuant to *International College of Surgeons*, federal courts exercising supplemental jurisdiction also may review the Commissioner's order. This scheme comports with the process approved by the Supreme Court for the denial of other supplemental benefits, such as disability

-18-

benefits. *Mathews*, 424 U.S. at 342-43. Thus, we affirm the dismissal of Wong's § 1983 claim alleging a violation of due process.

Wong also alleged that the defendants violated his right to equal protection by requiring him to undergo a PCA assessment and by failing to modify the policies and practices to accommodate Wong as required by Title II of the ADA and by the section 504 of the RA. This claim is predicated on the same allegations underlying Wong's ADA and RA claims. As a general rule, we affirm the dismissal of § 1983 equal protection or due process claims in this circumstance. *See, e.g.*, *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (8th Cir. 1999) (en banc). Such dismissal is proper because "the comprehensive enforcement mechanisms provided under § 504 [of the RA] and the ADA suggest Congress did not intend violations of those statutes to be also cognizable under § 1983." *Id.* (quoting *Davis v. Francis Howell Sch. Dist.*, 104 F.3d 204, 206 (8th Cir. 1997)); *accord Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1531 (11th Cir. 1997) (holding that a plaintiff may not maintain a § 1983 action in lieu of, or in addition to, an ADA cause of action if the only alleged deprivation is of employee's rights created by the ADA). Because Wong's equal protection claim is predicated on the same allegations as his ADA and RA claims, we conclude that the district court did not err by dismissing this § 1983 claim. We therefore affirm that dismissal. *See Phipps v. F.D.I.C.*, 417 F.3d 1006, 1010 (8th Cir. 2005) (noting that we may affirm a dismissal on any basis supported by the record).

III.

For the foregoing reasons, we affirm the dismissal of the § 1983 claims; vacate the dismissal of the ADA, RA, and state-law claims; and remand for further consideration.

BEAM, Circuit Judge, concurring in part and dissenting in part.

I concur in the court's conclusions in part II.C of its opinion, but as to parts II.A and II.B I respectfully dissent. The court concludes that despite Wong's failure to comply with Minnesota's procedures for appealing an order of the Commissioner of DHS, the district court's exercise of supplemental jurisdiction keeps his claim for review extant. This issue presents two questions: (1) whether the federal district court may, as a general matter, exercise supplemental jurisdiction over claims requiring adjudication of state administrative issues and (2) whether such exercise, in this case, effectively preempts Minnesota's DHS review procedure.[8] Under City of Chicago v. International College of Surgeons, 522 U.S. 156 (1997), the answer to the first question is clearly yes. However, I part ways with the court as to the second.

In my view, Wong's right to invoke 28 U.S.C. § 1367(a) federal district court jurisdiction does not permit him to ignore Minnesota's administrative procedures for considering and appealing a DHS decision. Neither does it permit Wong to disregard Minnesota's statute of limitations regarding finality of such a decision. Appletree Square I, Ltd. P'ship v. W.R. Grace & Co., 29 F.3d 1283, 1284 (8th Cir. 1994). Minnesota law states that a party aggrieved by an order from the Commissioner may appeal that order

> by serving a written copy of a notice of appeal upon the commissioner and any adverse party of record within 30 days after the date the commissioner issued the order, the amended order, or order affirming

_____

[8]I believe we should not follow the Fifth Circuit's approach in Bradberry v. Jefferson County, Texas, 732 F.3d 540, 554-55 (5th Cir. 2013), construing § 256.045 subdivision 7 of the Minnesota Statutes as a court venue provision. Such a conclusion directly contradicts the plain language of the statute, which directs an aggrieved party to appeal a DHS administrative order "by filing the original notice and proof of service with the court administrator of the [state] district court."

-20-

the original order, and by filing the original notice and proof of service with the court administrator of the district court.

Minn. Stat. § 256.045, subdiv. 7. The district court correctly held that Wong failed to comply with the thirty-day statute of limitations, making the Commissioner's decision final and preclusive. This court erroneously reaches a contrary result.

While the court concedes that Wong failed to file an "original notice and proof of service [of his notice of appeal] with the court administrator of the [state] district court" within the statutory period, it contends that such was not required by subdivision 7, invoking the grammatical interpretive "rule of the last antecedent." This was error. Barnhart v. Thomas, 540 U.S. 20 (2003), cited as authority by the court, notes that the last antecedent rule "can assuredly be overcome by other indicia of meaning." Id. at 26. Courts refuse to apply the rule when a contrary interpretation is the more reasonable one. Nobelman v. Am. Sav. Bank, 508 U.S. 324, 330-31 (1993). Here the "series-qualifier canon," Black's Law Dictionary (10th ed. 2014), should be used because it is illogical and unreasonable not to connect the words "by serving a written copy of a *notice of appeal*" and "by filing the original *notice* [of appeal]" to the thirty-day filing requirement.

To contend that the state appellate statute of limitations should be extended *ad infinitum* through the nonuse of a clearly placed timeliness modifier is clear error. Such an approach defies the obvious legislative intent contained in subdivision 7 (indeed, the subdivision is entitled "Judicial Review") and other relevant portions of § 256.045's review procedures.

For instance, subdivision 5 of § 256.045 states that "[a]ny order of the commissioner . . . shall be conclusive upon the parties unless appeal is taken in the manner provided by subdivision 7," which manner requires the notice of appeal to be

directed to the state court administrator. Thus, under the court's approach, the disputed matter would remain suspended indefinitely, possibly pending further litigation in the nature of injunction, declaratory judgment, or mandamus bottomed upon a showing of laches. In my view, the Minnesota Legislature could not have intended such a result. Wong's failure to appeal within thirty days as required by § 256.045, subdivision 7 made the Commissioner's ruling final and unappealable. Appletree Square, 29 F.3d at 1284.

I agree that pursuant to 28 U.S.C. § 1367(a), a federal district court has supplemental jurisdiction over a state administrative law claim so related to other federal claims that the state claim forms a part of the same case or controversy under Article III of the U.S. Constitution. I also agree that International College, 522 U.S. at 174, provides that such state administrative law claims (at least in a matter removed to the federal district court pursuant to 28 U.S.C. § 1441(a)) may include administrative claims that derive from a common nucleus of operative facts as the asserted federal claims. But, although state law cannot limit federal jurisdiction, a state law claim filed *ab initio* under § 1367(a) comes with state law limitations and proscriptions applicable to the substance and finality of the state law claim. For instance, as noted earlier, a state statute of limitations comes along with the supplemental state law claim. Appletree Square, 29 F.3d at 1284.

The court cites Swan v. Estate of Monette, 400 F.2d 274, 276 (8th Cir. 1968) (per curiam) (Lay, J., concurring), for the theorem that "a state statute cannot proscribe or limit federal jurisdiction." Notwithstanding this quotation from a one-judge concurrence in a circuit court per curiam opinion, I agree that it properly states the law as a general proposition. However, the court fails to note the next following paragraph in Swan that states, "[a]nother principle, equally well settled, is that the courts of the United States . . . are administering the laws of the State of the domicile

and are bound by the same rules that govern the local tribunals." Id. (quoting Sec. Trust Co. v. Black River Nat'l Bank, 187 U.S. 211, 227 (1902)).

In other words, in this case we look to Minnesota law and rules to determine the essence and finality of the state law claim as it arrives in federal court. Thus, Wong's right to invoke the jurisdiction of the federal trial court does not permit him to disregard Minnesota's procedures for establishing the existence of a final DHS decision. Under subdivision 7, Wong had thirty days to appeal the adverse ruling of the Commissioner to the Minnesota state district court (and, perhaps, the federal district court under an expanded rationale of International College). He did not timely file such an appeal, making the Commissioner's ruling final and unappealable. As noted by the Supreme Court, "it is sound policy to apply principles of issue preclusion to the factfinding of [state] administrative bodies acting in a judicial capacity." University of Tenn. v. Elliott, 478 U.S. 788, 797 (1986).

I believe this finality circumstance also obligates this court to affirm the district court's dismissal of Wong's ADA and RA claims. Because Wong's claim for benefits became final at the state level, the DHS's decision provides the requisite finality for claim preclusion in these causes of action as well. Therefore, I would affirm the district court's dismissal of Wong's ADA and RA claims as res judicata.

_____